[No. B146869. Second Dist., Div. Seven. Oct. 31, 2001.]

GOLDEN EAGLE INSURANCE CORPORATION, Plaintiff and
Appellant, v.
ROCKY COLA CAFÉ, INC., et al., Defendants and Respondents.

COUNSEL

Hawkins, Schnabel, Lindahl & Beck and Timothy A. Gonzales for Plaintiff and Appellant.

Steven W. Murray for Defendants and Respondents.

OPINION

BOLAND, J.*—

SUMMARY

This case presents the question whether an insurer, Golden Eagle Insurance Corporation, had a duty to defend its insureds, Rocky Cola Café, Inc., and several of its employees, in a lawsuit brought by Krista Bollman, a waitress formerly employed by Rocky Cola Café. Bollman's suit included claims for sexual harassment and defamation, among other causes of action. The insurance policy covered Rocky Cola's liability for personal injury caused by an offense, including defamation, arising out of Rocky Cola's business, but specifically excluded coverage for personal injury arising out of any employment-related defamation. We conclude that the defamation alleged in Bollman's complaint was not "employment-related" within the meaning of the exclusion, and that Golden Eagle therefore had a duty to defend its insureds in the Bollman lawsuit.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## FACTUAL AND PROCEDURAL BACKGROUND

*The underlying lawsuit*

Krista Bollman sued Rocky Cola Café, Wally Curry, a partner in the business, and shift managers Christopher Vitolo and Angela Henderson. Her complaint asserted causes of action for sexual harassment, retaliation for reporting sexual harassment, intentional infliction of emotional distress, defamation, wrongful termination, and negligent hiring and supervision.

The complaint alleged that a sexual relationship developed between Bollman and her supervisor, defendant Christopher Vitolo. A month or so later, Bollman told Vitolo she no longer wished to have sexual relations with him. Vitolo then began to make insulting comments and engage in unwelcome touching of Bollman's body. The complaint alleges that, by abuse of his supervisorial position and by "on-the-jobsite verbal and physical abuse," Vitolo coerced Bollman into engaging in sporadic sexual activity with him, including sex on the jobsite. Bollman eventually resigned. The complaint included allegations that, after Bollman informed Vitolo she would no longer have sex with him, he followed her to a gym and in the presence of others humiliated her with coarse and abusive remarks about her body.

Bollman's cause of action for defamation included allegations that Vitolo communicated to numerous other persons "words to the effect that [Bollman] was a 'sexually promiscuous and calculating bitch' who had, by use of sexually aggressive tactics, maneuvered him into an unwanted sexual relationship in order to obtain on-the-job favors from him." The complaint also alleged that Vitolo's false statements "were adopted and republished by all of the remaining Defendants, for the intent of unlawfully exculpating themselves from liability for [Bollman]'s injuries."

On November 20, 1998, Rocky Cola and its officers and employees tendered the defense of the Bollman lawsuit to Golden Eagle Insurance Corporation, which provided Rocky Cola's commercial general liability insurance coverage. Golden Eagle initially rejected the tender by letter dated December 17, 1998. Golden Eagle asserted that its coverages for bodily injury and personal injury were subject to exclusions for employment-related practices, policies, acts and omissions, so that there was no coverage under the policy.

Rocky Cola's counsel wrote to Golden Eagle on March 3, 1999, challenging its refusal to defend. Counsel pointed out that Bollman's claim for defamation fell within the scope of the policy's "personal injury" coverage,

and that Vitolo's alleged defamatory statement that Bollman was a "sexually promiscuous and calculating bitch" was not an "employment-related" practice within the meaning of the exclusion. Counsel cited case precedent supporting a narrow interpretation of the employment-related practices exclusion, and pointed out that since applicability of the exclusion was doubtful at best, the potential for coverage required Golden Eagle to defend.

Golden Eagle reconsidered its position and on April 27, 1999 agreed to defend Rocky Cola Café, Curry and Henderson under a reservation of rights.[1] Golden Eagle declined to defend or indemnify Vitolo on several grounds, including that he was not an insured because his conduct fell outside the scope of his employment for Rocky Cola Café. In December 1999, the Bollman suit was concluded with a judgment against Bollman and in favor of Rocky Cola Café and all the other defendants.

*This lawsuit*

Meanwhile, on June 25, 1999, while the Bollman suit was still pending, Golden Eagle filed a complaint for declaratory relief. Golden Eagle sought a declaration that it had no duty to defend Rocky Cola, Curry or Henderson in the Bollman action, and sought reimbursement of attorneys' fees and costs paid in defense of that lawsuit.

Both Rocky Cola and Golden Eagle filed motions for summary judgment. The trial court concluded that Bollman's complaint alleged facts within the coverage of Golden Eagle's policy, and that the employment practices exclusion did not apply as a matter of law to eliminate Golden Eagle's duty to defend. The court accordingly granted Rocky Cola's motion for summary judgment and denied Golden Eagle's motion for summary judgment/summary adjudication of issues.

---

[1]Golden Eagle's letter to Rocky Cola's counsel stated that damages for sexual harassment, unlawful employment practices, intentional infliction of emotional distress, wrongful termination of employment, and negligent hiring and supervision were not covered by the policy. Golden Eagle also reserved its rights "with regard to cause of action number 4, defamation of character." The letter further stated that "Golden Eagle Insurance Corporation reserves its full rights to be reimbursed and/or an allocation of attorney's fees and expenses in this action for causes of action that are not potentially covered under the policy. These causes of action are as follows: 1) sexual harassment; 2) unlawful employment practices; 3) intentional infliction of emotional distress; 4) defamation of character; 5) wrongful termination of employment; and 6) negligent hiring and supervision. Counsel is required to keep detailed records allocating time between potentially covered and non-covered claims." Golden Eagle also reserved "the right to later seek reimbursement of defense costs (in circumstances when no duty to defend exists) or indemnity payments it makes on behalf of Rocky Cola Café, Inc., Wally Curry, or Angela Henderson should it later be determined that the above claims in this litigation are excluded from coverage."

## Discussion

■ The controlling legal principles applicable to an insurer's duties under standard commercial general liability insurance policies are well-established. The policies, including the policy at issue, provide that the insurer has a duty to indemnify the insured for sums the insured becomes legally obligated to pay as damages for any covered claim. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766].) The policies likewise provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim. (*Id.* at pp. 45-46.) The duty to indemnify "runs to claims that are actually covered, in light of the facts proved." (*Id.* at p. 46.) The duty to defend, however, is broader than the duty to indemnify. The duty to defend "runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." (*Ibid.*)[2] In a "mixed" action, where some claims are potentially covered and others are not, the insurer has a duty imposed by law to defend the action in its entirety, because "[t]o defend meaningfully, the insurer must defend immediately," and "[t]o defend immediately, it must defend entirely." (*Id.* at pp. 48-49.)[3]

■ Golden Eagle admits "certain aspects of [Bollman's] defamation claim fall within the coverage of the policy . . . ."[4] Indeed, Golden Eagle points out that the policy covers damages caused by a defamatory statement

---

[2]The duty to defend arises when a tender is made and is discharged when the action is concluded. The duty may be extinguished earlier, "if it is shown that no claim can in fact be covered," but it is extinguished only prospectively and not retroactively. (*Buss v. Superior Court, supra,* 16 Cal.4th at p. 46.)

[3]In a mixed action, the insurer may not seek reimbursement from the insured for defense costs of those claims "that are at least potentially covered," unless the policy itself, or a separate contract supported by separate consideration, provides for reimbursement. The insurer may, however, seek reimbursement from the insured for defense costs of claims "that are not even potentially covered" by the policy. (*Buss v. Superior Court, supra,* 16 Cal.4th at pp. 49-50.) Reimbursement may be obtained only for defense costs "that can be allocated solely to the claims that are not even potentially covered." (*Id.* at p. 53.)

[4]The insuring agreement, as to personal injury liability, provides as follows:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' . . . to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' or offense and settle any claim or 'suit' that may result."

The insurance "applies to: [¶ 1) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you [¶] but only if the offense was committed in the 'coverage territory' during the policy period." "Personal injury" is defined to mean "injury, other than 'bodily injury,' arising out of one or more of the following offenses: [¶] . . . [¶] d. Oral or written publication of material that

"arising out of" Rocky Cola's business, and that Bollman's claim was based on a supervisor's defamatory statements regarding an employee. Golden Eagle argues, however, that the same facts which place the claim within the insuring agreement—namely, that Bollman's injury was caused by an offense "arising out of [Rocky Cola's] business"—also trigger the operation of the employment-related acts exclusion. On this point Golden Eagle is mistaken.[5]

The exclusion in question provides that the insurance does *not* apply to personal injury to a person "arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . . ."[6] However, the fact that the defamatory statement in question "aris[es] out of [Rocky Cola's] business" does not necessarily mean it is an employment-related act within the meaning of the exclusion. (*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123] ["[w]hereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer"].) Indeed, it is difficult to see how Vitolo's alleged statement that Bollman was a "sexually promiscuous and calculating bitch" is employment related. Legal precedents, including the cases cited by Golden Eagle, confirm that the employment-related practices exclusion is not interpreted so broadly.

---

slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or [¶] e. Oral or written publication of material that violates a person's right of privacy."

[5]Rocky Cola also contends that Bollman's complaint alleged she was touched and physically abused, and therefore sufficiently asserted claims within the policy's coverage for bodily injury. The insurer's coverage for bodily injury liability was also subject to an exclusion for bodily injury arising out of employment-related practices and acts, including harassment. In light of our conclusion that Golden Eagle had a duty to defend the lawsuit because of the potential for coverage of the defamation claim, we need not consider whether there was any duty to defend under the bodily injury coverage.

[6]The full text of the exclusion is as follows:

"This insurance does not apply to: [¶] 'Personal injury' to: [¶] 1) A person arising out of any: [¶] a) Refusal to employ that person; [¶] b) Termination of that person's employment; or [¶] c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or [¶] 2) The spouse, child, parent, brother or sister of that person as a consequence of 'personal injury' to that person at whom any of the employment-related practices described in paragraphs a), b) or c) above is directed. [¶] This exclusion applies: [¶] 1) Whether the Insured may be liable as an employer or in any other capacity; and [¶] 2) To any obligation to share damages with or repay someone else who must pay damages because of the injury."

The applicable principle was enunciated in *Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461 [52 Cal.Rptr.2d 678]. In that case, which involved an employment-related practices exclusion similar to this one, a former employee of Frank and Freedus sued the law firm, alleging it improperly terminated him because he was gay and had tested positive for HIV. The suit also included a cause of action for defamation based on statements made by a partner after the employee had been fired. The partner, in response to concerns expressed by the office administrator about staff morale after the termination, said the ex-employee was "likely gay and probably has AIDS." The partner then instructed the office administrator to inform the staff that the "real reason" the employee was fired was " ' *"failure to perform and develop as an associate."* ' " (*Id.*, at p. 465.) The employee alleged the italicized language defamed him. Allstate refused to defend, asserting that coverage for personal injuries due to termination of employment or employment-related practices was excluded.

The court in *Frank and Freedus* affirmed the trial court's conclusion that Allstate had no duty to defend, rejecting the contention that the exclusionary language—and specifically the term "employment-related"—was ambiguous. The court said the term "employment-related" is "used in its ordinary sense, i.e., related to employment," and that "it modifies the specified acts (including defamation) as well as the terms 'practices, policies, acts or omissions.' " (*Frank and Freedus v. Allstate Ins. Co., supra*, 45 Cal.App.4th at p. 471.) The court continued: "The defamation here was clearly employment-related. The statement was made in the context of [the employee]'s employment and its content is directed to [the employee]'s performance during employment. Thus, the defamation falls within subdivision (2) [termination of employment] of the exclusion. The defamation is also encompassed within subdivision (3) of the exclusion, i.e., a personal injury (defamation) arising out of termination of employment; the statement was made in the context of and related to [the employee]'s termination of employment." (*Id.* at pp. 471-472.) Accordingly, to fall within the scope of the employment-related practices exclusion, a defamatory statement must, at a minimum, be made "in the context of" the person's employment. (See also *Loyola Marymount University v. Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1222-1223 [271 Cal.Rptr. 528] [defamation claims occurring "as part and parcel of allegedly wrongful termination of the plaintiffs' employment" plainly were directly related to their employment and clearly within the language of an exclusion for personal injury sustained "as a result of an offense directly or indirectly related to the employment" of the person by the insured].)

The point was confirmed in *HS Services, Inc. v. Nationwide Mutual Ins. Co.* (9th Cir. 1997) 109 F.3d 642. The court, applying California law,

concluded the employment-related practices exclusion in the policy did *not* apply because the defamatory statements were not made in the context of the underlying plaintiff's employment.[7]

In *HS Services*, the plaintiff in the underlying suit, Steven Cade, was fired as president of Cade-Grayson Company, and sued Cade-Grayson for wrongful termination. The company learned that Cade had told Cade-Grayson's vendors that the company was a candidate for bankruptcy. To counteract Cade's statements in the marketplace, Cade-Grayson circulated a memo *informing its sales representatives to respond to inquiries with a statement* saying that the company was financially sound and Cade was terminated for acts involving dishonesty. Cade then amended his wrongful termination complaint to include a defamation claim based on those statements. Cade-Grayson's insurer refused to defend and denied coverage. The insurer argued the policy's employment-related practices exclusion excluded Cade's post-termination defamation claim from coverage because it arose out of the employment relationship. The trial court granted summary judgment to the insurer, but the Ninth Circuit Court of Appeals reversed.

The court held that the defamation was *not* "clearly employment-related" because "although its content is directed to Cade's employment, the statements were not made in the context of Cade's employment." (*HS Services, Inc. v. Nationwide Mutual Ins. Co., supra,* 109 F.3d at p. 646.) "While it may be literally true that the remarks 'related' to Cade's employment, that relationship was too indirect and attenuated to qualify under the exclusion." (*Ibid.*)[8] The court held that "for an act or omission to be 'employment-related,' the relationship must be direct and proximate. . . . This limitation of the exclusion is consistent with the 'context' required by *Frank and Freedus*, and the 'part and parcel' requirement of *Loyola Marymount*. Any broader interpretation of the exclusion would defeat the reasonable expectation of the insured." (*Id.* at p. 647.)

We conclude that, as in *HS Services* and unlike the statement in *Frank and Freedus*, the defamatory statement that Bollman was a "sexually promiscuous and calculating bitch" was not made in the context of Bollman's

---

[7]The exclusion was the same in all pertinent respects as the Golden Eagle policy exclusion.

[8]The court pointed out that in *Frank and Freedus v. Allstate Ins. Co., supra,* 45 Cal.App.4th 461, "the defamatory remark was directly related to employment in that it related to the employer's attempts, as employer, to explain the termination to its other employees; that was its context. It was 'clearly' an attempt by the employer, as employer, to bolster employee morale and, thus, was employment-related." (*HS Services, Inc. v. Nationwide Mutual Ins. Co., supra,* 109 F.3d at p. 646.) In *HS Services*, by contrast, the purpose of the defamatory remarks was "to protect Cade-Grayson in the marketplace. The remarks related directly to competition between Cade and Cade-Grayson in the marketplace and the latter's attempt to protect itself against a remark made by Cade, not as an ex-employee, but as a present competitor; that was their context." (*Ibid.*)

employment. Nor was the content of the remark directed to her performance during employment or to anything else relating to her employment.[9] The alleged defamation was therefore outside the scope of the exclusion, and was potentially covered by the policy.[10] The trial court therefore correctly concluded Golden Eagle had a duty to defend against Bollman's suit, and properly granted summary judgment in favor of Rocky Cola Café, Curry and Henderson.

### DISPOSITION

The judgment is affirmed. Rocky Cola Café is to recover its costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 2002. Kennard, J., was of the opinion that the petition should be granted.

---

[9]Golden Eagle points out Bollman alleged that the "sexually promiscuous and calculating bitch" remark by Vitolo included his assertion that Bollman had, "by use of sexually aggressive tactics, maneuvered him into an unwanted sexual relationship in order to obtain on-the-job favors from him." The complaint also alleged that Vitolo's false statements "were adopted and republished by all of the remaining Defendants, for the intent of unlawfully exculpating themselves from liability for [Bollman]'s injuries." Golden Eagle argues in effect that these additional allegations render the defamatory statements employment related. We decline to parse the alleged defamatory statements so closely, or to conclude that the additional allegations render Vitolo's remarks clearly employment related.

[10]Golden Eagle argues that Bollman's claim against Rocky Cola was dependent on its status as her employer, and "could not have arisen without the occurrence of an employment related act." The argument reaches too far; it would mean that no defamation claim by an employee against an employer would ever be covered where there is an employment-related practices exclusion. It is plain from the cases discussed in the text that the exclusion is not so broad. As the court pointed out in *HS Services, Inc. v. Nationwide Mutual Ins. Co., supra,* 109 F.3d 642, "Read literally and broadly, the terms 'arising out of' and 'employment-related . . . acts or omissions' would include *any* claim or injury connected in any way with employment termination, no matter how attenuated that connection. We do not think the parties mutually intended the exclusion to be read so expansively." (*Id.* at p. 645, fn. omitted.)