[No. A097404. First Dist., Div. Four. Nov. 20, 2002.]

HARRY W. LOW, as Insurance Commissioner, etc., Plaintiff, v. GOLDEN EAGLE INSURANCE COMPANY, Defendant and Respondent; U.S. CONTINENTAL MARKETING, INC., Claimant and Appellant.

**COUNSEL**

Daniel S. Latter for Claimant and Appellant.

Koller, Nebeker, Carlson & Haluck, Richard Patrick Edwards; Orrick, Herrington & Sutcliffe, Cynthia Joy Larsen; Musick, Peeler & Garrett and Cheryl A. Orr for Defendant and Respondent.

**OPINION**

**SEPULVEDA, J.**—While working for appellant insured, U.S. Continental Marketing, Inc., an employee (Employee) filed an employment discrimination lawsuit against his employer, alleging his supervisor (Supervisor) had sexually harassed him; Supervisor was joined as a party defendant. On learning of Employee's suit, KMEX, a Los Angeles radio station, decided to cover the story behind it. The focus of the KMEX coverage was Employee's allegation he was forced to have sex with Supervisor in order to keep his job. David Williams, the president of appellant insured, also appeared on the broadcast and answered questions about his organization's employment practices. The KMEX broadcast prompted Supervisor to file a cross-complaint against appellant and Williams for damages for defamation, based upon an allegedly libelous statement made by Williams to the KMEX interviewer. As set forth in Supervisor's pleading, the following statements were published during the KMEX interview:[1]

"Employee: While [Supervisor] was my supervisor at U.S. Continental Marketing, [he] repeatedly forced me to have sex with him, even though he had AIDS. He also forced me to spend time at his home and pull down my pants and walk around naked in front of him. He said if I didn't do these things, he would fire me.

"Interviewer: You had sex with [Supervisor] even though he had AIDS, out of fear of losing a job paying $4.25 an hour?

---

[1] We grant respondent's request to notice judicially the cross-complaint filed by Supervisor in the underlying litigation. (Evid. Code, § 452.)

"Employee: Yes. The job meant a lot to me. [¶ . . . ¶]

"Interviewer: [To David Williams, president of appellant]: Did [Supervisor] ever discuss with you about his having AIDS?

"Williams: Occasionally we would talk about it."

Supervisor's cross-complaint went on to allege that, through Williams's statement during the radio broadcast, appellant had published private facts relating to Supervisor's sexual orientation and medical condition, causing him severe emotional distress, humiliation, and loss of prospective employment.[2] Appellant insured tendered defense of Supervisor's cross-complaint to its liability insurer, respondent Golden Eagle Insurance Company. The latter rejected the tender on the ground that, because coverage was excluded by the employment-related practices (ERP) provision of the policy, no duty to defend its insured arose. The insurer then (and now) being in reorganization/liquidation proceedings, appellant applied to the San Francisco County Superior Court for issuance of an order to show cause, as prescribed by Insurance Code section 1010 et seq., why the insurer's refusal to defend should not be overturned. Following briefing and argument, Judge Saldamando denied the application on the ground the ERP provision of the policy excluded coverage—and any consequent duty to defend—for the alleged defamation.

This appeal is timely. We affirm.

## ANALYSIS

■ The question presented is whether the Insurance Commissioner, acting on behalf of respondent insurer-in-liquidation, and the trial court erred in concluding respondent was under no duty to provide a defense to appellant in the third party litigation of Supervisor. Both reached that conclusion on the ground the ERP provision of the policy excluded coverage of, and a dependent duty to defend against, the claim asserted in the underlying lawsuit—that appellant had personally injured Supervisor by defaming him. The parties appear to agree that four published opinions—three from our Court of Appeal and one from the federal Court of Appeals for the Ninth

---

[2]According to the record, Supervisor's position was eliminated on January 20, 1997, and he ceased to be employed by insured.

Circuit—guide the resolution of this issue. ██ ██ We summarize that quartet of decisions in the order in which they were decided.[3]

 In *Loyola Marymount University v. Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217 [271 Cal.Rptr. 528] (*Loyola*), the insured university was sued for damages in the underlying action by two former employees, one a tenured professor, the other a baseball coach. The professor was dismissed after marrying another faculty member while still a Jesuit priest; the coach was discharged on vague charges of "negligence." (*Id.* at pp. 1220-1221.) Both alleged wrongful termination together with (in one case) invasion of privacy (the professor's marriage) and (in the other) defamation (publishing false accusations about the coach's performance). (*Ibid.*)

The insurer rejected the university's demand that it provide a defense in the litigation under its liability policy on the ground the suits fell within the ERP exclusion of the policy; the university then filed suit against its insurer for declaratory relief and damages. After the trial court granted the insurer's motion for summary judgment, a panel of the Second Appellate District affirmed. The appellate court reasoned that the " 'offenses' alleged in the state court complaints, occurring as part and parcel of allegedly wrongful termination of the plaintiffs' employment, plainly were directly related to [the university's] employment of [the third party plaintiffs], and hence were clearly within the language of [the ERP] exclusion . . . ." (*Loyola, supra,* 219 Cal.App.3d at p. 1223.)

The *Loyola* court went on to reject expressly the insured's contention that the ERP exclusion did not apply because the events in suit occurred *after* the

---

[3]We are mindful, of course, that pertinent to duty-to-defend cases is the familiar proposition that "the duty to defend is broader than the duty to indemnify." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) As a result, questions over the scope of insurance coverage do not in themselves necessarily excuse an insurer from a duty to defend a third party lawsuit against its insured. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1086 [17 Cal.Rptr.2d 210, 846 P.2d 792].) Indeed, as the California high court has succinctly put it, the duty to defend is excused only where "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168].) In other words, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th 287, 300.) Notwithstanding these principles, we agree with the court in *Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461 [52 Cal.Rptr.2d 678] (*Frank and Freedus*), that the language of the exclusion in issue does not qualify as "ambiguous" for these purposes, being used in its "ordinary sense, i.e., related to employment . . . . The clear meaning of the [ERP] exclusion is coverage for practices, policies, acts or omission which are related to employment, including employment-related defamation." (*Id.* at p. 471.)

employment relationship had ceased to exist. "The asserted distinction is unavailing," it wrote. (*Loyola, supra,* 219 Cal.App.3d at p. 1223.) "Even though postemployment defamations would involve injuries occurring after the employment [citation], the offenses would still fall clearly within the policy exclusion, as either 'directly or indirectly related to the employment . . . .' [Insured's] contention, that this language can (or must) be read as limited to injuries sustained when the employee is still employed, is semantically unreasonable and unacceptable." (*Ibid.*)

In the next published decision, *Frank and Freedus, supra,* 45 Cal.App.4th 461, the Fourth District Court of Appeal, relying in part on *Loyola, supra,* 219 Cal.App.3d 1217, held the liability insurer of a law firm sued in the underlying action for wrongful termination and defamation by an attorney it had discharged, was under no duty to defend. The allegedly defamatory remarks, made by a partner to the firm's office administrator *after* the associate's termination, consisted of the statement that the attorney was discharged because he was " ' "likely gay and probably has AIDS," ' " followed by an instruction to inform staff that " ' "the real reason" for [the associate's] termination was "failure to perform and develop as an associate." ' " (*Frank and Freedus, supra,* 45 Cal.App.4th at p. 465, italics omitted.) In the ensuing duty-to-defend litigation brought by the law firm, the insured contended the ERP exclusion did not apply because the defamation occurred after the associate's employment had ended and, in any event, the language of the policy exclusion, unlike the provision in *Loyola,* did not refer to practices " ' "directly or *indirectly* related to the employment" ' " (*Frank and Freedus, supra,* 45 Cal.App.4th at p. 473); instead, it referred only to "termination of employment" and "employment-related practices." (*Ibid.*)

Neither contention was persuasive, the *Frank and Freedus* court concluded. The first argument failed because the policy term "employment-related practices" was "not technical in nature. It is used in its ordinary sense, i.e., related to employment . . . ." (*Frank and Freedus, supra,* 45 Cal.App.4th at p. 471.) The asserted defamation "was clearly employment-related," the court continued, because it "was made *in the context* of [the associate's] employment and its content is directed to [his] *performance during employment.*" (*Id.* at pp. 471-472; italics added.) "The defamation is also encompassed within [another provision] of the exclusion," the court concluded, "[as] a personal injury (defamation) arising out of termination of employment; the statement was made in the context of and related to [the associate's] termination of employment." (*Ibid.*)

As for the insured's contention that the *text* of the ERP exclusion compelled a result different from that in *Loyola,* the court had this to say: "Th[e]

difference in policy language does not compel a different result. First, the defamation here was directly related to [the associate's] employment, i.e., the statement was made in the context of [his] employment and its content directly related to [his] performance as an employee. Second, as in *Loyola*, the exclusionary language is clearly broader than [the insureds] contend and is not limited to acts (including defamation) occurring during the term of employment. By its terms, the exclusion applies to all personal injuries arising not only during employment but also due to a 'refusal to employ' and to 'termination of employment.' The contrary interpretation urged by [the insureds] is neither supported by the policy language nor is semantically reasonable." (*Frank and Freedus, supra*, 45 Cal.App.4th at p. 473, fn. omitted.)

The next case in our chronology, *HS Services, Inc. v. Nationwide Mut. Ins. Co.* (9th Cir. 1997) 109 F.3d 642 (*HS Services*), was decided by a panel of the Ninth Circuit Court of Appeals, sitting in a diversity case and applying California law. The underlying suit arose out of the termination of the president of the insured, a dehydrated food business, who then filed suit for wrongful discharge. Soon after he was terminated, the insured learned its former president had formed a competing company and had told common vendors the insured was suffering financially and facing bankruptcy. (*Id.* at p. 644.) To counteract the adverse business effects of the former president's statements, the insured circulated a memorandum informing its sales representatives and outside food brokers that the former president had been terminated " 'for acts involving dishonesty.' " (*Ibid.*) The former president then amended his wrongful termination complaint to add a count for defamation, based on the insured's public statements; the insured, in turn, demanded its liability insurer defend the action. It declined, invoking the ERP provision of the policy, and sought declaratory relief. (*Ibid.*)

After the district court entered summary judgment for the insurer based on the policy's ERP exclusion, a divided Ninth Circuit panel reversed. Although reversing, the *HS Services* court notably rejected the insured's contention that the temporal interval—three months—between termination and alleged defamatory statement was alone sufficient to defeat application of the ERP exclusion. The majority opinion reasoned that "neither the passage of time alone nor the pre- and post-termination distinction is a satisfactory basis upon which to make the exclusion determination. It is entirely possible that post-termination, injury-causing acts or omissions, even months after termination, could arise directly and proximately from the termination or be so related." (*HS Services, supra*, 109 F.3d at p. 645.) The court went on, however, to reject the insurer's reliance on *Frank and Freedus, supra*, 45

Cal.App.4th 461. Instead, relying on the opinion of an Ohio appellate court,[4] the majority adopted the following formulation: "We hold that to 'arise out of' a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately resulted from the termination." (*HS Services, supra,* 109 F.3d at p. 647.) Because the defamatory remarks in suit were not part of the plaintiff's termination and their proximate cause was his own comments in the marketplace, made as a competitor, concerning the insured's financial condition, "the chain of causation between the termination and the remarks was broken."[5] (*HS Services,* at p. 647.)

The fourth and most recent decision called to our attention is *Golden Eagle Ins. Corp. v. Rocky Cola Café, Inc.* (2001) 94 Cal.App.4th 120 [114 Cal.Rptr.2d 16] (*Rocky Cola*). There, a waitress formerly employed at the insured's restaurant filed suit against the insured and several of its employees, seeking damages for harassment and defamation, among other causes of action. Her complaint alleged she had become sexually involved with her shift supervisor at work, that after her passion had cooled, he continued to pursue her, following her to a gym where, in the presence of others, he "humiliated her with coarse and abusive remarks about her body." (*Id.* at p. 123.) The insured tendered the defense to its insurer; the latter declined the tender, invoking the policy's ERP exclusion, and sought declaratory relief.[6] (*Rocky Cola,* at pp. 122-123.) The trial court ruled the plaintiff's complaint raised a duty to defend and granted the insured summary judgment; the Court of Appeal affirmed.

Relying on the formulation in *Frank and Freedus, supra,* 45 Cal.App.4th 461, the *Rocky Cola* court reasoned that it was "difficult to see how [the shift supervisor's] alleged statement that [plaintiff] was a 'sexually promiscuous and calculating bitch' is employment-related." (*Rocky Cola, supra,* 94

---

[4] *Great American Ins. Co. v. Hartford Ins. Co.* (1993) 85 Ohio App.3d 815 [621 N.E.2d 796]. (See *HR Services, supra,* 109 F.3d at p. 646.)

[5] Dissenting, Circuit Judge Beezer wrote: "But for [the employee's] employment with [insured], the defamation would not have occurred. This renders the defamation 'employment-related' and that is all that is required . . . in order for the exclusion to apply. It is not necessary that the defamation be 'clearly employment-related.' Nor is it necessary that the defamation was 'a part of or directly and proximately resulted from the termination.' [¶] According to *Frank and Freedus,* a defamatory statement is employment-related if it is made in the context of employment and if its content is directed to performance during employment." (*HR Services, supra,* 109 F.3d at pp. 647-648 (dis. opn. of Beezer, J.), italics omitted.)

[6] Like the ERP provision at issue in *Rocky Cola, supra,* 94 Cal.App.4th at page 126, footnote 6, the policy in suit has an endorsement, endorsement form CC 21 47 (Oct. 1993), entitled "Employment-Related Practices Exclusion" which reads: "This insurance does not apply to: Personal injury to 1) A person arising out of any: a) Refusal to employ that person; b) Termination of that person's employment; or c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . . ."

Cal.App.4th at p. 126.) "We conclude," the court wrote, "that, as in *HS Services* and unlike the statement in *Frank and Freedus*, the defamatory statement [concerning plaintiff] was not made in the context of [plaintiff's] employment. Nor was the content of the remark directed to her performance during employment or to anything else relating to her employment. The alleged defamation was therefore outside the scope of the exclusion, and was potentially covered by the policy." (*Id.* at pp. 128-129, fns. omitted.)

All four of the cases summarized above involved generally similar facts, similar causes of action, closely similar policy provisions, and identical law. Yet the four appellate courts that have considered the duty-to-defend issue in this context are evenly divided. While the *outcomes* are evenly split, however—two courts holding no duty to defend arose and two reaching the opposite conclusion—we think there exists an underlying rationale that reconciles all four. We agree, first, with the conclusion reached by the courts in all four of these cases that the mere fact the alleged tort sued on arose *after* the employment relationship had ceased cannot, per se, serve to take the case out of the ambit of the ERP exclusion. Instead, the temporal dimension appears to be one of the handful of factors relevant to the ultimate determination that the events in suit either were, or were not, within the scope of the exclusion. Second, from the case law, it appears that other factors relevant to that ultimate determination include (1) the nexus between the allegedly defamatory statement (or other tort) at issue and the third party plaintiff's employment by the insured, and (2) the existence (or nonexistence) of a relationship between the employer and the third party plaintiff *outside* the employment relationship.

In *HS Services, supra,* 109 F.3d 642, for example, the third party plaintiff had become not only a former employee of the insured at the time of the defamatory statements, but a business rival and competitor. And it was out of *that* context—business competition—rather then the former employment relationship, that the defamatory comments arose. Similarly—and only slightly less removed—are the facts in *Rocky Cola, supra,* 94 Cal.App.4th 120, where, although the employment relationship persisted during the period when the events sued on occurred, they arose not out of the plaintiff's employment, but out of a sexual affair with her shift supervisor that had gone sour. Moreover, it was that *extra*-employment relationship between the plaintiff and the shift supervisor that provoked the alleged defamation, rather than events with any nexus to the employment relationship itself. At the other end of the spectrum lie the two cases displaying both a more direct connection with the employment relationship and the absence of any extra-employment nexus. In both the *Loyola* and *Frank and Freedus* fact patterns, the defamatory remarks came on the heels of the employee's termination and

related directly to the reasons for it; moreover, in neither case was a relationship between the insured and the plaintiff, transcending the employment relationship, demonstrated.

Ranking the cases along an axial line, according to the weight of the relevant factors, the *Frank and Freedus* and *HS Services* cases lie at opposite poles. The former is much the easier case, the required nexus between employment and the allegedly tortious conduct being evident and more or less "direct," and there being no indication that the law partner had any relationship with the third party plaintiff other than that of employer and employee. On the other hand, the connection between the plaintiff's former employment and the alleged defamation in the *HS Services* fact pattern is, as the Ninth Circuit majority points out, "attenuated." (See, e.g., *HS Services, supra,* 109 F.3d at p. 647.) Resolution of the issue thus turns, as it not uncommonly does, on the drawing of lines. Or, to vary the metaphor, do the facts of record here put this case in the *Rocky Cola-HS Services* camp or in the *Loyola-Frank and Freedus* camp?

In the latter, we conclude. The statement by Williams, appellant insured's president, certainly qualified as employment-*related*. It was given in response to a question concerning Supervisor's medical condition (and impliedly, his sexual orientation) while an employee of the organization Williams headed. Appearing on a news program devoted to an investigation of appellant's employment practices, Williams was asked and answered a question concerning his knowledge of a particular employee's medical status. Moreover, there is no indication, either in the KMEX interview or otherwise in this record, that Williams and the third party had any kind of relationship beyond that of employer and employee.[7] Unlike the personal relationship between the plaintiff and her shift supervisor in *Rocky Cola,* for example, or the business competitors in *HS Services* that served to take those situations out of an employment context, here the only relationship between the two derived from the employment relationship, i.e., was "employment-related."

■ The result we embrace is reinforced by the standard of our appellate review of the trial court's judgment. Because the insurer is in liquidation, the scope of our review of determinations of both the superior court and the liquidation trustees in the resolution of claims by insureds against an insolvent carrier is circumscribed. (See generally Ins. Code, §§ 1010-1062.) Our

---

[7]Of course, Supervisor apparently had an extra-employment relationship with another coworker, Employee; but that relationship bore no connection to the allegedly defamatory statement by Williams, insured's president, during the KMEX interview, which formed the basis for the cross-complaint and appellant's demand that respondent provide a defense.

high court has long since observed that such conservation proceedings arise under the broad police powers of the state to ensure the reorganization or orderly liquidation of insolvent insurers and the protection of their policyholders and the public. (See, e.g., *Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761] ["Neither the [insurance] company nor a policyholder has the inviolate rights that characterize private contracts. The contract of the policyholder is subject to the reasonable exercise of the state's police power"].) A corollary of that broad power is the judiciary's limited scope of inquiry into the liquidation trustees' grounds for rejecting claims for compensation by policyholders. As the *Carpenter* court put the ruling standard, "The only restriction on the exercise of this power [to administer liquidation proceedings under the Insurance Code] is that the state's action shall be reasonably related to the public interest and shall not be arbitrary or improperly discriminatory." (*Ibid.*)

That seminal formulation has since been glossed repeatedly to mean the measure of judicial review in such proceedings is the familiar "abuse of discretion" standard. (See, e.g., *In re Executive Life Ins. Co.* (1995) 32 Cal.App.4th 344, 358 [38 Cal.Rptr.2d 453] ["review is not de novo. The trial court reviews the Commissioner's actions under the abuse of discretion standard [citation]: was the action arbitrary, i.e., unsupported by a rational basis . . ."]; *Commercial Nat. Bank v. Superior Court* (1993) 14 Cal.App.4th 393, 398 [17 Cal.Rptr.2d 884]; *Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 515 [21 Cal.Rptr.2d 578] [same].) ▮ Applying that circumscribed standard of appellate review to the record before us, we conclude neither the trial court nor the Insurance Commissioner abused their discretion in ruling the ERP exclusion of the policy in suit did not require the insurer to defend its insured.

CONCLUSION

The judgment of the superior court is affirmed.

Kay, P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 19, 2003.