AMERICAN ALLIANCE INSURANCE COMPANY, Plaintiff-Appellant and Cross-Appellee, v. 1212 RESTAURANT GROUP, L.L.C., *et al.*, Defendants-Appellees and Cross-Appellants (Demetri G. Alexander, Defendant-Appellee).

First District (5th Division)    No. 1—01—4236

Opinion filed July 11, 2003.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Amy E. Johnson, of counsel), for appellant.

Schiff & Hulbert, of Chicago (Matthew B. Schiff, Linda C. Kramer, and James W. Hulbert, of counsel), for appellees 1212 Restaurant Group, L.L.C., Russell Scalise, and Scott Schwab.

No brief filed for appellee Demetri G. Alexander.

JUSTICE HARTIGAN delivered the opinion of the court:

In August 2000, Demetri G. Alexander filed an action for damages against defendants, 1212 Restaurant Group, L.L.C. (1212), Russell Scalise, and Scott Schwab, related to his employment and subsequent termination with 1212, including defamation *per se* against Scalise and Schwab. In September 2000, defendants tendered the Alexander action to plaintiff, American Alliance Insurance Company (American Alliance) as defendants' insurance carrier, and in November 2000, American Alliance denied coverage and refused to provide a defense. American Alliance then filed a complaint for declaratory judgment as to its duty to defend defendants in the underlying Alexander action. In November 2001, the trial court, in considering cross-motions for summary judgment, found that American Alliance had a duty to defend defendants in the Alexander action and dismissed defendants' claim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)).

American Alliance appeals, arguing that the trial court erred in finding a duty to defend the Alexander action when the alleged defamation fell under the employment-related practices (ERP) exclusion in its policy with defendants. Additionally, defendants appeal, arguing that the trial court improperly dismissed their section 155 claim against American Alliance because American Alliance's denial was vexatious and unreasonable. We affirm.

## I. BACKGROUND

1212 operates a restaurant called The State Room at 1212 North State Street in Chicago. Scalise is a majority owner of 1212 and manager. Schwab works as Scalise's designee in charge of day-to-day operations of the restaurant. In May 1999, Alexander entered into an employment agreement with Scalise to work as creative director and front house manager of the restaurant. The initial period of Alexander's employment was three years.

In August 2000, Alexander filed a complaint against 1212, Scalise and Schwab alleging breach of contract, defamation *per se* against Scalise and Schwab individually, and intentional infliction of emotional distress against Scalise and Schwab individually. In his complaint, Alexander alleged that Scalise dropped a piece of equipment on Alexander's left foot that crushed his toe and foot. This injury required surgery and Alexander had to wear a brace and use crutches upon his return to work. Alexander alleged that Scalise and Schwab repeatedly told Alexander to "lose the shoe," meaning not to wear his brace because they did not want a "gimp" at the front door of the restaurant.

Alexander further alleged that throughout his employment at 1212, Scalise and Schwab repeatedly called Alexander names, including, "gimp," "cokehead," "faggot," "homo," etc., in front of Alexander and other 1212 employees. These remarks also included lewd and offensive comments about sexual acts Alexander was allegedly engaging in with a male graphic artist consultant of 1212. In June 2000, Alexander alleged that Scalise terminated his employment without prior notice. Alexander averred that Scalise handed him a separation agreement and threatened Alexander in front of another 1212 employee that if Alexander did not sign the agreement, Scalise would tell people that Alexander was "robbing the joint." Alexander further claimed that, on information and belief, following his termination, Scalise and Schwab told people that Alexander had his hand in the till and was robbing "the joint."

In September 2000, defendants tendered their defense in the Alexander action to American Alliance.

American Alliance issued a policy to 1212 as named insured. The policy provided commercial general liability insurance for an effective policy period from January 25, 2000, to and including January 25, 2001. Included in the policy was the following exclusion:

"B. The following exclusion is added to Paragraph 2., Exclusions of Section I—Coverage B—Personal and Advertising Injury Liability:

This insurance does not apply to:

'Personal and advertising injury':

1. A person arising out of any:

   (a) refusal to employ that person;

   (b) termination of that person's employment; or

   (c) employment-related practices, polices, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline [*sic*], defamation, harassment, humiliation, discrimination directed at that person."

In November 2000, based on that exclusion, American Alliance denied

coverage and refused to provide any defense for defendants. Also, in November 2000, American Alliance filed its complaint for declaratory judgment seeking a judgment that American Alliance had no duty to defend the Alexander action.

In December 2000, defendants filed an answer and affirmative defense, as well as a counterclaim alleging that American Alliance acted vexatiously and unreasonably in its refusal to defend defendants in violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)). Defendants also filed a motion for judgment on the pleadings and American Alliance moved to dismiss defendants' counterclaims. In March 2001, the trial court denied defendants' motion for judgment on the pleadings and granted American Alliance's motion to dismiss defendants' counterclaim, but permitted them to amend if they came up with additional facts.

The parties filed cross-motions for summary judgment that the trial court heard in November 2001. Following oral argument, the court entered judgment in favor of defendants and found that American Alliance had a duty to defend. The trial court found:

> "But in looking at the matter in light of the summary judgment motion and the very liberal reading that the Court must give to the duty to defend, I—and ambiguities that I think appear in the complaint which doesn't make it clear to the Court when this defamation began, *** whether it was a continuation of the defamation that occurred during the course of his employment or whether it was something that took place at some point in the future but post-employment and the clarification that counsel has brought pursuant to *** what the deposition said that this took place a year *** out, at best it makes this factor ambiguous to the Court in terms of when the defamation actually occurred.
>
> And since it is not clear *** by the complaint when the defamation occurred the Court cannot make a final determination that it is *** not outside of the exclusion and that this behavior may possibly be covered and in those circumstances the Court under the duty to defend is required to rule, make the judgment in light of the insured in this matter."

The court also granted American Alliance's motion to dismiss defendants' amended counterclaim with prejudice.

This appeal follows.

## II. ANALYSIS

On appeal, American Alliance argues that the trial court erred in granting summary judgment in favor of defendants because the ERP exclusion precludes coverage of the underlying action. Defendants assert on cross-appeal that the trial court improperly dismissed their

counterclaim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)) because American Alliance's denial was vexatious and unreasonable.

## A. Whether the ERP Exclusion Precludes Coverage

■ When construing an insurance policy, the court's role is to ascertain and enforce the intention of the parties as expressed in the agreement. *de los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304 (1990). To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993). We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349, 701 N.E.2d 493, 496 (1998).

■ Where a declaratory judgment action is brought to determine an insurer's duty to defend, the court must look only to the complaint in the underlying action to see if the allegations set forth therein show that the insured's conduct is within or potentially within coverage. *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 562, 571 N.E.2d 256, 260 (1991). If the facts alleged in the underlying complaint fall within or potentially within the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. *Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888, 891-92, 684 N.E.2d 853, 855 (1997). The burden is on the insurer to show that a claim falls within a provision that limits or excludes coverage. *Pekin*, 291 Ill. App. 3d at 892, 684 N.E.2d at 855. Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District*, 158 Ill. 2d 116, 122, 632 N.E.2d 1039, 1042 (1994). The insurer's duty to defend is much broader than its duty to indemnify its insured. *Crum*, 156 Ill. 2d at 393-94, 620 N.E.2d at 1079. An insurer's refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the stated facts do not fall even potentially within the policy's coverage. *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991).

■ With this in mind, we review the allegations of the Alexander complaint along with the American Alliance insurance policy. Specifi-

cally, we consider the underlying complaint in light of the ERP exclusion.

Illinois courts have not yet addressed the ERP exclusion. However, other jurisdictions, including California and Louisiana, have interpreted this exclusion.

California has considered the ERP exclusion in five cases. The rationale in the cases is consistent, but the outcomes turn on facts specific to each case. The first case, *Loyola Marymount University v. Hartford Accident & Indemnity Co.*, 219 Cal. App. 3d 1217, 1220-21, 271 Cal. Rptr. 528, 529 (1990), addressed the ERP exclusion when the insured university was sued by two former employees, one a tenured professor dismissed after marrying another faculty member while still a Jesuit priest and the second a baseball coach terminated on a vague charge of negligence. Both alleged wrongful termination while the professor further claimed invasion of privacy and the coach argued defamation. *Loyola*, 219 Cal. App. 3d at 1221, 271 Cal. Rptr. at 529-30.

The reviewing court found that the offenses claimed in the underlying complaints, "occurring as part and parcel of allegedly wrongful termination of the plaintiffs' employment," directly related to the insured's employment of the plaintiffs, and thus was under the purview of the ERP exclusion. *Loyola*, 219 Cal. App. 3d at 1223, 271 Cal. Rptr. at 531. The court further held that the mere fact that events in the underlying suits occurred after termination did not render the ERP exclusion inapplicable, and such a reading is "semantically unreasonable and unacceptable." *Loyola*, 219 Cal. App. 3d at 1223, 271 Cal. Rptr. at 531.

The next case to consider the ERP exclusion expanded on the *Loyola* decision. In *Frank & Freedus v. Allstate Insurance Co.*, 45 Cal. App. 4th 461, 465, 52 Cal. Rptr. 2d 678, 680 (1996), a former associate filed a defamation complaint following a partner's statements to the office administrator that the attorney was dismissed because he is "likely gay and probably has AIDS," but the administrator was told to inform the staff that the "real reason" for the associate's termination was "failure to perform and develop as an associate."

The appellate court held that the term "employment-related practices" is not ambiguous and "is used in its ordinary sense, i.e., related to employment." *Frank & Freedus*, 45 Cal. App. 4th at 471, 52 Cal. Rptr. 2d at 684. The court found that the defamation was clearly employment-related because it "was made in context of [the associate's] employment and its content is directed to [his] performance during employment." *Frank & Freedus*, 45 Cal. App. 4th at 471-72, 52 Cal. Rptr. 2d at 684. The *Frank & Freedus* court also rejected the insured's attempts to distinguish the policy language and held that a

"difference in policy language does not compel a different result." *Frank & Freedus*, 45 Cal. App. 4th at 473, 52 Cal. Rptr. 2d at 685.

The next case, *HS Services, Inc. v. Nationwide Mutual Insurance Co.*, 109 F.3d 642, 644 (9th Cir. 1997), was decided by the Ninth Circuit Court of Appeals arising as a diversity case and applying California law. In *HS Services*, the president of the insured was terminated and filed a wrongful discharge suit. *HS Services*, 109 F.3d at 643-44. Shortly after his termination, the former president formed a competing company and the insured discovered that he told competing vendors the insured was experiencing financial distress and facing bankruptcy. *HS Services*, 109 F.3d at 644. In response to these statements made by the former president, the insured circulated a memo to employees on how to respond to inquiries by vendors and listed the reason for the former president's termination as dishonesty. *HS Services*, 109 F.3d at 644. Upon hearing of this memo, the former president amended his complaint to include defamation. *HS Services*, 109 F.3d at 644.

The Ninth Circuit reversed but declined to adopt the insured's argument that the passage of time between termination and defamation made the exclusion inapplicable. *HS Services*, 109 F.3d at 645. The Ninth Circuit found that the possibility exists that posttermination acts or omissions could arise directly and proximately from the termination and be so related. *HS Services*, 109 F.3d at 645. In reversing, the majority found that unlike *Frank & Freedus*, the comments were not made in the context of the former president's employment, but instead the purpose was to protect the insured in the marketplace and related to the competition between the insured and its former president. *HS Services*, 109 F.3d at 646. The court held that to "arise out of" a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately resulted from the termination. *HS Services*, 109 F.3d at 647. Since the defamatory remarks were not part of the former president's termination but, rather, in response to his comments as a competitor, "the chain of causation between the termination and the remarks was broken." *HS Services*, 109 F.3d at 647.

The fourth decision, in *Golden Eagle Insurance Corp. v. Rocky Cola Café, Inc.*, 94 Cal. App. 4th 120, 123, 114 Cal. Rptr. 2d 16, 17-18 (2001), involved a former waitress who filed suit against the insured restaurant seeking damages for harassment, defamation, and other causes of action. She claimed that she had become sexually involved with her shift supervisor and that after the relationship ended, he continued to pursue her and "humiliated her with coarse and abusive remarks about her body." *Rocky Cola*, 94 Cal. App. 4th at 123, 114 Cal. Rptr. 2d at 18.

In its decision, the *Rocky Cola* court concluded that the fact that the defamatory statement arose out of Rocky Cola's business does not necessarily mean it is an employment-related act within the meaning of the exclusion. *Rocky Cola*, 94 Cal. App. 4th at 126, 114 Cal. Rptr. 2d at 20. The court found it difficult to see how the shift supervisor's alleged statement that the former waitress was a "sexually promiscuous and calculating bitch" was employment-related. *Rocky Cola*, 94 Cal. App. 4th at 126, 114 Cal. Rptr. 2d at 21. The *Rocky Cola* court agreed with *HS Services* and found that the defamatory statement was not made in the context of the former waitress's employment nor was it related to her work performance. *Rocky Cola*, 94 Cal. App. 4th at 128-29, 114 Cal. Rptr. 2d at 22. Thus, the alleged defamation was outside the scope of the ERP exclusion. *Rocky Cola*, 94 Cal. App. 4th at 129, 114 Cal. Rptr. 2d at 23.

Most recently in *Low v. Golden Eagle Insurance Co.*, 104 Cal. App. 4th 306, 314, 128 Cal. Rptr. 2d 423, 428 (2002), the California Court of Appeals found that an "underlying rationale reconciles" the prior decisions. In that case, the insured's president appeared on a radio program to discuss an employee's allegation of sexual harassment by a supervisor. *Low*, 104 Cal. App. 4th at 308, 128 Cal. Rptr. 2d at 424. The radio broadcast incited the supervisor to file a defamation claim against the insured and its president. *Low*, 104 Cal. App. 4th at 308-09, 128 Cal. Rptr. 2d at 424. The insurer refused coverage under the ERP exclusion. *Low*, 104 Cal. App. 4th at 309, 128 Cal. Rptr. 2d at 424.

In its analysis, the *Low* court considered the four prior cases to guide its outcome. First, the court agreed that the mere fact the alleged tort sued on arose after the employment relationship had ended cannot remove the case from the scope of the ERP exclusion. *Low*, 104 Cal. App. 4th at 314, 128 Cal. Rptr. 2d at 428. Second, based on an examination of the case law, the following factors appear relevant to the ultimate determination that events were, or were not, within the reach of the exclusion: (1) the nexus between the allegedly defamatory statement (or other tort) at issue and the third-party plaintiff's employment by the insured, and (2) the existence (or nonexistence) of a relationship between the employer and the third-party plaintiff outside the employment relationship. *Low*, 104 Cal. App. 4th at 314, 128 Cal. Rptr. 2d at 428-29.

Considering the prior cases, the *Low* court found that the extra-employment relationship of business competition in *HS Services* and the sexual relationship in *Rocky Cola* provoked the defamation, and not the employment relationship itself. *Low*, 104 Cal. App. 4th at 314, 128 Cal. Rptr. 2d at 429. On the other side, in *Loyola* and *Frank &*

*Freedus*, the defamation followed the employee's termination and related to the reasons for the termination; additionally, neither case involved a relationship between the insured employer and the third-party plaintiff beyond the employment relationship. *Low*, 104 Cal. App. 4th at 314-15, 128 Cal. Rptr. 2d at 429. Based on this precedent, the *Low* court held that the statement by the insured's president qualified as employment-related and no indication appeared in the record that any relationship beyond employer and employee existed, and, therefore, the insurer had no duty to defend. *Low*, 104 Cal. App. 4th at 315, 128 Cal. Rptr. 2d at 429-30.

The United States District Court in Louisiana considered the California cases in *Adams v. Pro Sources, Inc.*, 231 F. Supp. 2d 499 (M.D. La. 2002), when the court considered an ERP exclusion. The *Adams* court outlined the following conclusions: (1) the phrase "employment-related practices" even though undefined in a commercial general liability policy is not *per se* ambiguous; (2) an alleged defamatory statement made after an employment relationship has ended can be excluded under an "employment-related practices exclusion"; and (3) whether such a statement is excluded depends on whether the statement is made in the context of employment and describes a former employee's performance. *Adams*, 231 F. Supp. 2d at 505.

Adams filed a complaint that he was subject to a hostile work environment and that in retaliation for his complaints, his employer defamed him in an online database in the trucking industry. *Adams*, 231 F. Supp. 2d at 500-01. The court found that statement clearly defamed him and is covered by the ERP exclusion. *Adams*, 231 F. Supp. 2d at 505.

After considering the above cases, under the facts in this case, we find that much of the defamation alleged in the Alexander complaint is outside the scope of the ERP exclusion and that American Alliance does have a duty to defend.

Initially, we agree with the cases discussed above that whether or not the defamation occurred posttermination is not sufficient to remove it from the reach of the ERP exclusion. Posttermination acts of defamation or other employment-related practices can reasonably arise directly and proximately from the termination. See *HS Services*, 109 F.3d at 645. Additionally, we agree with *Loyola* and find that such a narrow interpretation is "semantically unreasonable and unacceptable." *Loyola*, 219 Cal. App. 3d at 1223, 271 Cal. Rptr. at 531. Here, the mere fact that Scalise and Schwab's defamation continued after Alexander's termination is not sufficient to render the exclusion inapplicable. Consequently, we agree with the appellant that the trial court

was in error when it held that the ERP exclusion was not applicable because some of the alleged statements were made after Alexander's employment was terminated. However, we may affirm the judgment of the trial court on any basis in the record. *Gunthorp v. Golan*, 184 Ill. 2d 432, 438, 704 N.E.2d 370, 373 (1998).

Following the logic under *Adams* and *Low*, the salient question is whether the alleged defamatory statements were made in the context of Alexander's employment and related to his employment performance. We find that some of them were not. Like the court in *Rocky Cola* reasoned, the fact that the defamatory statements arose out of 1212's business does not necessarily mean they were an employment-related act within the meaning of the exclusion. Not all of the harassment by Scalise and Schwab related to Alexander's work performance. Alexander's complaint alleges that both during and subsequent to his termination, Schwab and Scalise referred to Alexander's sexual activities and they said Alexander was a "drunk" and a "cokehead." These statements constituted personal insults and lewd comments separate from his employment.

Even though, unlike in *Rocky Cola* and *HS Services*, no relationship existed outside of the employment relationship to provoke the defamation, the nexus between the above-mentioned defamatory statements and Alexander's employment is missing. See *Low*, 104 Cal. App. 4th at 314, 128 Cal. Rptr. 2d at 429. The content of these statements was not about Alexander's work performance, and, therefore, they do not fall under the purview of the exclusion. See *Frank & Freedus*, 45 Cal. App. 4th at 471-72, 52 Cal. Rptr. 2d at 684.

It is well settled that if one claim in a complaint falls within or potentially within a policy's coverage, then the insurer has a duty to defend the insured as to the entire complaint. *Pekin*, 291 Ill. App. 3d at 891-92, 684 N.E.2d at 855.

Based on the duty to defend public policy in Illinois and the guidance of the California cases, we hold that the exclusion does not apply and that American Alliance has a duty to defend the Alexander complaint.

### B. Whether the Trial Court Erred in Dismissing Defendants' Claim Under Section 155 of the Illinois Insurance Code

On cross-appeal, defendants argue that the trial court erred in dismissing their claim for penalties under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)). We disagree.

Section 155 provides, in pertinent part:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or

the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (West 2000).

■ When the trial court dismissed defendants' original counterclaim under section 155, defendants were permitted to amend if additional facts supported vexatious and unreasonable conduct. Defendants' amended counterclaim merely attached the tender and denial letters, but did not present any new facts. If the insured merely states that the insurer committed vexatious and unreasonable delay without some modicum of factual support, the insured will not have stated a cause of action under section 155. *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 679, 688 N.E.2d 757, 764 (1997). The trial court properly dismissed defendants' section 155 claim.

Even considering the facts of this case, it is clear that American Alliance did not act vexatiously and unreasonably in denying coverage. The determination of whether an insurer's actions are vexatious and unreasonable must be determined after examining the totality of circumstances. *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 752, 681 N.E.2d 552, 558 (1997). Absent vexatious behavior by the insurer, an insured cannot recover attorney fees incurred in bringing a declaratory judgment action against the insurer to establish coverage. *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 637, 747 N.E.2d 955, 968 (2000).

Since the ERP exclusion had not been addressed by Illinois courts, American Alliance's denial was not vexatious and unreasonable, even though we find that it does have a duty to defend the underlying Alexander complaint.

## C. Motions Taken With the Case

■ Appellant's motion to strike the cross-appeal is *denied* because the original notice of appeal was served by mail on November 26, 2001, and under Supreme Court Rule 12(c) (145 Ill. 2d R. 12(c)), service by mail is effective four days after mailing, here November 30, 2001; therefore, defendants' notice of cross-appeal was timely filed on December 10, 2001.

512

Appellees' motion for sanctions is *denied*.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAMPBELL, P.J., and QUINN, J., concur.