**HS SERVICES, INC., a California corporation, Plaintiff–Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation, Defendant–Appellee.**

**No. 95–55489.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1996.

Decided March 31, 1997.

is overruled to the extent that it conflicts with our decision today.

Watson B. Tucker, Mayer, Brown & Platt, Chicago, Illinois, for plaintiff-appellant.

Kelley K. Beck, Hawkins, Schnabel, Lindhal & Beck, Los Angeles, California, for defendant-appellee.

Before: FERGUSON, BEEZER and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Dissent by Judge BEEZER.

TASHIMA, Circuit Judge:

This is an insurance coverage dispute. Plaintiff HS Services, Inc., formerly known as Cade–Grayson Company (and referred to herein as Cade–Grayson) seeks indemnification for a judgment against it and legal costs incurred in defending against a defamation action which it contends was covered under its commercial general liability (CGL) policy, issued by defendant Nationwide Mutual Insurance Company (Nationwide). The district court granted summary judgment to Nationwide on the basis of an exclusion in the policy. We reverse.

## I

### FACTS AND PROCEDURAL BACKGROUND

In December, 1991, Steven Cade (Cade) was fired as president of Cade–Grayson for altering inspection certificates and substituting asparagus powder for shrimp in dried

food. In March, 1992, Cade sued Cade–Grayson for wrongful termination.

About the same time, in March, Cade–Grayson learned that Cade (who had formed Seawind, a competing company in the dehydrated food business) had told its (Cade–Grayson's) vendors that Cade–Grayson was experiencing financial difficulty and was a candidate for bankruptcy. To counteract Cade's statements in the marketplace, a Cade–Grayson manager circulated a memo informing its sales representatives on how to respond to inquiries regarding the company's financial status:

I would recommend the following response concerning Cade–Grayson and Steve Cade's status.

1. Cade-Grayson is financially sound and values your business.

2. Steve Cade was terminated by Cade–Grayson Company for acts involving dishonesty.

3. We cannot provide further details because the company is in litigation with Mr. Cade and our lawyers advise us not to go into specifics at this time.

A letter repeating the substance of the memo was also sent to food brokers who acted as manufacturer's representative for Cade–Grayson.

Approximately one year later, in March, 1993, Cade amended his wrongful termination complaint to include a claim for defamation based on the above statements. Cade–Grayson tendered defense of the defamation claim to Nationwide under its CGL policy. Nationwide refused to defend and denied coverage. Cade–Grayson asked Nationwide to reconsider its refusal to defend and provide coverage in light of the following additional information:

The alleged defamation took place on March 20, 1992, a full three months after Steven Cade was terminated from employment. In March of 1992, Cade–Grayson was advised that Steven Cade had been making disparaging statements about Cade–Grayson to at least one of Cade–Grayson's suppliers. In order to respond, Cade–Grayson found it necessary to issue a statement to its brokers to the effect that Steven Cade was terminated for acts involving dishonesty.

Nationwide maintained its refusal. On May 20, 1993, a jury returned a verdict against Cade–Grayson on Cade's defamation claim for $1 million.

This action followed. Cade–Grayson seeks indemnification for the entire amount of the verdict and its costs of defense. The parties made cross-motions for summary judgment. Nationwide argued that the policy's employment-related practices exclusion excluded Cade's post-termination defamation claim from coverage because it arose out of the employment relationship. The district court denied Cade–Grayson's motion and granted Nationwide's motion. This timely appeal followed. The district court had jurisdiction under 28 U.S.C. § 1332.[1] We have jurisdiction under 28 U.S.C. § 1291.

## II

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). The meaning and interpretation of an insurance contract is a question of law reviewed de novo. *Aetna Cas. and Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1511 (9th Cir.1991). In a diversity case, we decide issues of state law as we believe the state's highest court would decide them. *Jones–Hamilton Co. v. Beazer Materials & Serv., Inc.*, 973 F.2d 688, 692 (9th Cir.1992).

## III

## DISCUSSION

■ In this case, whether or not there is coverage depends on the interpretation of an exclusion. Because this diversity case arose in California, we apply California law. The

1. This action does not implicate the prudential concerns of *Employers Reins. Corp. v. Karussos*, 65 F.3d 796 (9th Cir.1995), and *American Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir.1995), because this is not a declaratory relief action and the underlying state court action has ended. *See Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1288–90 (9th Cir.1996).

insurer bears the burden of bringing itself within a policy's exclusionary clauses. *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 880, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). Exclusionary clauses are strictly construed. *Loyola Marymount Univ. v. Hartford Accident and Indem. Co.*, 219 Cal.App.3d 1217, 1223, 271 Cal.Rptr. 528 (1990). *See also State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 101, 109 Cal.Rptr. 811, 514 P.2d 123 (1973) ("Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insured.") (citations omitted).

■ The CGL policy provided coverage, *inter alia*, for the following:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury".... We will have the right and duty to defend against any "suit" seeking those damages.... This insurance applies to "personal injury" caused by an offense arising out of your business.... Personal injury means injury ... arising out of one ... of the following offenses ...

(d) Oral or written publication of material that slanders or libels a person....

The policy's "Employment–Related Practices Exclusion" provided that coverage does not apply to:

c. "Personal injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts or omissions; or

(4) Consequential "personal injury" as a result of (1) through (3) above.

Read literally and broadly, the terms "arising out of" and "employment-related ... acts or omissions" would include *any* claim or injury connected in any way with employment termination, no matter how attenuated

that connection.[2] We do not think the parties mutually intended the exclusion to be read so expansively. Our "fundamental goal" in interpreting this exclusion must be "to give effect to the mutual intention of the parties." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (citation omitted).

It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage.

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986) (citations omitted) (emphasis in original).

Here Cade–Grayson relies on the temporal element-the three-month interval between termination and defamation-to take this claim out of the exclusion. It cites *Davaris v. Cubaleski*, 12 Cal.App.4th 1583, 16 Cal. Rptr.2d 330 (1993), in support. *Davaris* held that a former employee's claim for a defamatory statement made by the employer after termination was not barred by the exclusivity provision of the workers' compensation law. However, neither the passage of time alone nor the pre- and post-termination distinction is a satisfactory basis upon which to make the exclusion determination. It is entirely possible that post-termination, injury-causing acts or omissions, even months after termination, could arise directly and proximately from the termination or be so related.

Nationwide, on the other hand, relies on *Frank and Freedus v. Allstate Ins. Co.*, 45 Cal.App.4th 461, 52 Cal.Rptr.2d 678 (1996), which involved an "employment-related practices" exclusion almost identical to the one involved in this case. There, a former employee of Frank and Freedus sued that law firm for defamation based on statements made by a partner after he had been fired. Responding to the office manager's concerned comments about the firing, the partner said that the ex-employee was "likely gay

---

**2.** At oral argument, the court suggested that appellee's broad reading of the exclusion would exclude an injury suffered by a pedestrian who was hit by an employee who was so upset over his impending firing that he failed to exercise due care in driving a company vehicle home from work.

and probably has AIDS." He also instructed the office administrator to inform the law firm's staff that the "real reason" the employee was fired stemmed from his *"failure to perform and develop as an associate."* *Id.* at 465, 52 Cal.Rptr.2d 678 (emphasis in original).

Allstate refused to defend, finding that coverage was excluded for personal injuries due to termination of employment or employment-related practices. As stated, the "employment-related" exclusion was virtually identical to the exclusion involved here. *See id.* at 470, 52 Cal.Rptr.2d 678. In upholding summary judgment for Allstate, the court held, in the context of that case, that the term "employment-related" was unambiguous. *Id.* at 471, 52 Cal.Rptr.2d 678. Its holding is illuminated, and limited, by the following statement:

The defamation here was clearly employment-related. The statement was made in the context of Caprow's employment and its content is directed to Caprow's performance during employment.

*Id.* at 471–72, 52 Cal.Rptr.2d 678.

In the case at bench the defamation is not "clearly employment-related" because, although its content is directed to Cade's employment, the statements were not made in the context of Cade's employment. In *Frank and Freedus* the defamatory remark was directly related to employment in that it related to the employer's attempts, as employer, to explain the termination to its other employees; that was its context. It was "clearly" an attempt by the employer, as employer, to bolster employee morale and, thus, was employment-related.

Here, the purpose of the remarks was to protect Cade–Grayson in the marketplace. The remarks related directly to competition between Cade and Cade–Grayson in the marketplace and the latter's attempt to protect itself against a remark made by Cade, not as an ex-employee, but as a present competitor; that was their context. While it may be literally true that the remarks "related" to Cade's employment, that relationship was too indirect and attenuated to qualify under the exclusion. In short, because of the differ-

ence in context, this case is not controlled by *Frank and Freedus.*

This case is also factually distinguishable from the other case primarily relied on by Nationwide, *Loyola Marymount,* which involved application of a similar, but not identical, exclusion.

LMU contends that this coverage extends to the Callahan and Wood state court actions, because both of them allege or at least potentially encompass claims of defamation and invasion of privacy. Hartford does not directly challenge the premise; instead, it contends that the actions are in any event excluded from coverage and defense by exclusion (q) of the policy, which states: "This insurance does not apply ... [¶](q) to personal injury sustained by any person as a result of an offense directly or indirectly related to employment or prospective employment of such person by the named insured." ... Hartford has plainly sustained that burden [of proving that the state court claims fell within the asserted exclusion].

The "offenses" alleged in the state court complaints, occurring as *part and parcel of allegedly wrongful termination* of the plantiffs' employment, plainly were directly related to LMU's employment of Callahan and Wood, and hence were clearly within the language of exclusion (q).

*Loyola Marymount,* 219 Cal.App.3d 1217, 1222–23, 271 Cal.Rptr. 528 (1990) (emphasis added). In the case at bench, the remarks were not "part and parcel" of Cade's termination.

We find the distinction made in *Great American Ins. Co. v. Hartford Ins. Co.,* 85 Ohio App.3d 815, 621 N.E.2d 796 (1993), a coverage case which involved a similar exclusion, to be helpful. There, the exclusion excluded, *inter alia,* "personal injury arising out of discrimination or humiliation directly or indirectly related to the employment ... of any person or persons by any insured...." *Id.* 621 N.E.2d at 799. A former employee of the insured, Japel, sued it for several claims, including invasion of privacy. Japel's complaint alleged that the acts giving rise to the invasion of privacy occurred, not only after his employment was

terminated, but after he had filed a discrimination claim with the Civil Rights Commission. He alleged that he was threatened "with public exposure of his alleged sordid background unless he settled the legal actions filed against" his former employer. *Id.* 621 N.E.2d at 800.

The insurer conceded coverage, but argued that the employment-related exclusion applied. The court disagreed. "The invasion of privacy claim may not arise out of 'discrimination or humiliation' directly or indirectly related to Japel's employment but may be found to arise out of threats made subsequent to Japel's employment...." Thus, the court concluded that there was potential coverage and held that the insurer was obligated to defend against the action. *Id. Great American* thus recognizes that the relationship between the termination and threatened invasion of privacy could have been attenuated by the employee's intervening complaint to the Civil Rights Commission if, in fact, the employer's threat was made in retaliation for the filing of the discrimination claim.

 We hold that to "arise out of" a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately resulted from the termination. Here, the defamatory remarks were not a part of Cade's termination, and their proximate cause was Cade's own remark in the marketplace, made as a competitor, concerning Cade–Grayson's financial condition. Thus, the chain of causation between the termination and the remarks was broken. We also hold that for an act or omission to be "employment related," the relationship must be direct and proximate. Given the immediate circumstances which caused Cade–Grayson to make the defamatory remarks in response to Cade's remark, its relationship to Cade's employment and his termination was too attenuated to qualify for exclusion as "employment related." This limitation of the exclusion is consistent with the "context" required by *Frank and Freedus,* and the "part and parcel" requirement of *Loyola Marymount.* Any broader interpretation of the exclusion would defeat the reasonable expectation of the insured.

In addition to the coverage issue, Nationwide raises a number of other contentions which were not reached by the trial court because of its ruling on the coverage issue. On this record, we decline to reach those issues which should first be ruled on by the district court.

**REVERSED and REMANDED.**

BEEZER, Circuit Judge, dissenting:

The opinion of the court holds that the defamation at issue is not "clearly employment-related." I dissent.

The first principle of contract interpretation is to ascertain the plain meaning of the language. "If the contractual language is clear and explicit, it governs." *Frank and Freedus v. Allstate Ins. Co.,* 45 Cal.App.4th 461, 52 Cal.Rptr.2d 678, 684 (1996). The "Employment–Related Practices Exclusion" in Allstate's policy provides that coverage does not apply to "personal injury" arising out of "defamation ... or other employment-related practices, policies, acts or omissions." Consistent with the California Court of Appeals' holding in *Frank and Freedus,* I would hold that this language is clear and unambiguous. *Id.* 52 Cal.Rptr.2d at 684.

Also consistent with *Frank and Freedus,* I would hold that the defamation at issue here "arose out of" an employment-related act. The defamation occurred approximately three months after Cade's termination as president of Cade–Grayson. A Cade–Grayson manager circulated a memo to all of the sales representatives recommending responses to questions regarding "Cade–Grayson and Steve Cade's status." The memo went on to say that Cade was terminated for acts involving dishonesty.

But for Cade's employment with Cade–Grayson, the defamation would not have occurred. This renders the defamation "employment-related" and that is all that is required by the contract in order for the exclusion to apply. It is not necessary that the defamation be "*clearly* employment-related." Nor is it necessary that the defamation was "a part of or directly and proximately resulted from the termination."

According to *Frank and Freedus,* a defamatory statement is employment-related if it is made in the context of employment and if its content is directed to performance during employment. 52 Cal.Rptr.2d at 684. The opinion of the court distinguishes *Frank and Freedus* on the grounds that the statements at issue here were not made in the *context* of Cade's employment. While the statements were directed at the marketplace, they also were directed at the current employees of Cade–Grayson. In *Frank and Freedus* the court concluded that statements directed at employees were made in the context of employment. *Id.* 52 Cal.Rptr.2d at 685.

The facts of this case are materially indistinguishable from those of *Frank and Freedus.* I would hold that the defamation here arose out of an employment-related act, and affirm the district court.