242 F.3d 899 (9th Cir. 2001)
 BOSTON MUTUAL INSURANCE, a Massachusetts Corporation, Plaintiff-Appellant,
v.
ROBERT W. MURPHREE, husband, individually and as natural parent of Susan Elizabeth Murphree, a minor; GLENDYON SUE MURPHREE, wife, individually and as a natural parent of SUSAN ELIZABETH MURPHREE, a minor, Defendants-Appellees.
 No. 99-16239
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 12, 2000
Filed March 12, 2001
 
 [Copyrighted Material Omitted]
 Frederick C. Berry, Jr. and Brendan N. Mahoney, Frederick C. Berry, Jr., P.C., Phoenix, Arizona, for the plaintiff-appellant.
 Scott A. Salmon and Kerry M. Griggs, The Cavanagh Law Firm, P.A., Phoenix, Arizona, for the defendants-appellees.
 Appeal from the United States District Court for the District of Arizona David Alan Ezra, District Judge, Presiding. D.C. No.CV 97-00372 PHXSMM
 Before: Myron Bright,[1] Stephen Reinhardt, and Barry G. Silverman, Circuit Judges.
 SILVERMAN, Circuit Judge:
 
 
 1
 In this case we are asked to decide whether an employee health plan, governed by the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. SS 1001 et seq., may coordinate medical benefits with a participant's underinsured motorist (UIM) coverage. We hold that under the coordination provision at issue here, an employee health plan may not coordinate medical benefits with a participant's UIM coverage.
 
 I. BACKGROUND
 
 2
 On May 7, 1996, Susan Murphree, a minor, was seriously injured in an automobile collision. She suffered compound fractures of the fibula and tibia, crushed vertebrae, and severe soft tissue damage. Murphree's injuries required extensive care, including multiple grafts and other reconstructive surgeries, resulting in medical costs of approximately $312,000.
 
 
 3
 The majority of Murphree's medical expenses were covered by her father's employee health plan--The Arizona Health Dimensions Benefit Plan. The Plan's insurer, Boston Mutual, paid approximately $307,000 of Murphree's medical costs. Her remaining medical expenses were paid by her auto insurer, Uniguard Insurance Company, whose policy contained $5,000 in first-party, "med-pay" coverage.
 
 
 4
 The Uniguard policy also provided $500,000 in UIM insurance, which covered losses exceeding the other driver's insurance limits. The parties agree that Murphree's personal injury damages, exclusive of her medical expenses, totaled approximately $1,500,000. Although these losses were only partially offset by other driver's liability coverage of $100,000, Uniguard did not tender the UIM proceeds because Boston Mutual claimed an interest in these funds.
 
 
 5
 Boston Mutual brought this declaratory action under 29 U.S.C. S 1132 (a)(3)(B) against the Murphrees and Uniguard, attempting to coordinate the Plan's medical coverage with Uniguard's UIM coverage. Relying on the Plan's coordination provision, Boston moved for summary judgment, seeking reimbursement from the UIM proceeds for the medical expenses it paid on Murphree's behalf. The Plan's coordination provision provides in pertinent part:
 
 
 6
 use the rules of this provision to determine the medical benefits of this Plan in any claim determination period if the Covered Person is also covered by one or more other Plans at the same time. Plan means:
 
 
 7
 1. Any group insurance or group type policy whether insured or uninsured. Any automobile policy individual or group; this includes:
 
 
 8
 a. any group or blanket policy; but, not a school accident policy;
 
 
 9
 b. any group or individual practice coverage;
 
 
 10
 c. any government Plan or any Plan required by law which permits us to coordinate benefits;
 
 
 11
 d. association, fraternal union or other Plans written on a franchise or group basis;
 
 
 12
 e. any mandatory automobile reparations insurance (no-fault) providing benefits under a medical expense reimbursement provision for hospital, medical, dental, or other health care services and treatment because of accidental bodily injuries arising out of a motor vehicle accident, and any other medical and disability benefits received under any policy where and to the extent that coordination of such benefits is permitted by law. We will pay excess or coordinate if the No-Fault Policy has a Coordination Provision.
 
 
 13
 The Murphrees cross-moved for summary judgment, contending that the Plan's coordination provision did not apply to an auto policy's UIM coverage. Uniguard interpleaded its coverage limits of $500,000 and was dismissed from the suit.
 
 
 14
 In ruling on the cross-motions for summary judgment, the district court reasoned that the parties' claims turned on the scope of the Plan's coordination clause. The court explained that in interpreting the coordination provision, it would look to the "reasonable expectation of the parties", construing any ambiguities against the Plan. Examining the coordination language, the court concluded, "it is clear that the Plan only intended to coordinate with automobile [coverage ] provided for `hospital, medical, dental or other health care services . . . and any other medical and disability benefits.' " Further, the court concluded that the coordination provision was solely intended to coordinate with other no-fault medical coverage. Thus, the court rejected Boston Mutual's attempt to coordinate with Uniguard's fault-based UIM coverage and granted the Murphrees' motion for summary judgment.
 
 
 15
 On appeal, Boston Mutual contends that the district court misinterpreted the Plan's coordination provision. We have jurisdiction under 28 U.S.C. S 1291, and we affirm.
 
 II. STANDARD OF REVIEW
 
 16
 We review the district court's summary judgment order, including the court's interpretation of the Plan's coordination clause, de novo. See HS Servs. Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 644 (9th Cir. 1997).
 
 III. DISCUSSION
 A. Governing Law
 
 17
 Generally, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. S 1144(a). Congress intended to bring uniformity to this area by eliminating the "threat of conflicting or inconsistent State and local regulation. " Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9 (1987). Consistent with this aim, we interpret the Plan's coordination provision under uniform federal common law. See Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990).
 
 
 18
 B. The Plan's Coordination of Benefits Provision
 
 
 19
 First termed "other insurance" clauses, coordination provisions are rooted in a long history of insurers' attempts to allocate liability among multiple policies covering the same claim. See 15 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3d S 219:1, at 6-7 (1999). Insurers initially promulgated these clauses to discourage property owners from overinsuring their realty, defeating the insured's potential windfall by apportioning the actual loss among the various insurers. As insurers expanded their coverage into employee health care, they inserted similar clauses, often labeled "coordination of benefits." Id. S 220.44 at 54. While the name changed, the purpose remained the same: to prevent the insured from recovering more than her actual medical costs. Id.
 
 
 20
 In this case, the Plan's coordination provision evinces a similar goal, purporting to coordinate medical benefits with "one or more other Plans" providing medical benefits. "Plan" is defined as:
 
 
 21
 "Any automobile policy individual or group; this includes . . . (e) any mandatory automobile reparations insurance (no-fault) benefits providing benefits under a medical expense reimbursement provision . . ."
 
 
 22
 As the district court correctly observed, this definition does not mention UIM coverage.
 
 
 23
 Boston Mutual, however, contends that the phrase "any auto policy" necessarily includes UIM insurance. In Boston Mutual's view, the district court misinterpreted the coordination provision's reference to no-fault policies in subsection (e). Rather than suggesting the only type of auto policy with which the Plan may coordinate, Boston Mutual argues that subsection (e) merely specifies an example already encompassed by the phrase "any auto policy." Boston Mutual urges that as a matter of rudimentary English, "any auto policy" means every auto policy, including policies providing UIM coverage.
 
 
 24
 We interpret the Plan's coordination clause in the "ordinary and popular sense as would a [plan participant ] of average intelligence and experience." Evans, 916 F.2d at 1441 (quot-ing Allstate Ins. Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir. 1995). Taken to its logical end, Boston Mutual's sweeping construction would allow the Plan to coordinate with all auto coverages, including collision, comprehensive, and liability. Of course, this is an absurd reading, which Boston Mutual conceded at oral argument. Pressed to reconcile its interpretation, Boston Mutual narrowed its view, contending that the coordination provision only applies to auto coverages providing first-party medical benefits. However, even under this alternative construction, an average participant would not be alerted to the fact that the Plan could coordinate with UIM coverage.
 
 
 25
 An auto policy's UIM coverage differs significantly from first-party medical coverage. For example, first-party medical coverage, by definition, only covers medical expenses, while UIM insurance covers all damages for which an underinsured driver would be liable, such as pain, suffering, lost income, emotional distress, lost earning capacity, loss of consortium, and property damage, just to name a few. See California State Auto. Ass'n Inter-Ins. Bureau v. Carter, 210 Cal. Rptr. 140, 143 (Cal. Ct. App. 1985). Moreover, unlike first-party medical coverage, UIM coverage is fault-based, meaning that insured must establish a third party's liability in tort to trigger coverage. See ROBERT E. KEETON & ALAN A. WIDISS, INSURANCE LAW S 4.9(e)-(d) at 398-404 (2d ed. 1987). Finally, while first-party medical insurance covers medical expenses up to the policy limits, UIM insurance only covers damages exceeding the third party tortfeasor's own insurance limits. Id.
 
 
 26
 Given the functional differences between these coverages, no reasonable insured would expect that the Plan's coordination clause, which at most implicates other first-party medical coverage, could possibly apply to UIM coverage. See generally Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 387 (9th Cir. 1990) (adopting the reasonable expectations doctrine as a principle of federal common law). If Boston Mutual wished to coordinate such disparate policies, it bore the responsibility of crafting a clear coordination provision specifically referencing UIM insurance. See Barnes v. Independent Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan, 64 F.3d 1389, 1393 (9th Cir. 1995) (noting that any ambiguities in an ERISA plan must be construed against the drafter and in favor of the participant). In the absence of such language, we hold that the Plan may not coordinate with Murphree's UIM coverage.
 
 IV. ATTORNEYS' FEES AND COSTS
 
 27
 The Murphrees request attorneys' fees and costs associated with this appeal. We ordinarily grant a prevailing beneficiary in an ERISA action reasonable attorneys' fees and costs, absent special circumstances cautioning against it. See Can-seco v. Construction Laborers Pension Trust for Southern California, 93 F.3d 600, 609-610 (9th Cir. 1996) (recognizing our discretionary power to award fees under 29 U.S.C. S 1132(g)(1)). Here, the Murphrees have prevailed on appeal and there are no special circumstances warranting the denial of their request. Accordingly, we grant the Murphrees' request for attorneys' fees and costs.
 
 V. CONCLUSION
 
 28
 The judgment of the district court is AFFIRMED . We grant the Murphrees' request for attorneys' fees and costs associated with this appeal.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Myron Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.