CHURCH MUTUAL INSURANCE COMPANY, Plaintiff,

v.

UNITED STATES LIABILITY INSURANCE COMPANY, et al., Defendants.

No. 03 CV 1393–LAB(JMA).

United States District Court, S.D. California.

April 26, 2004.

881

Gregory F. Stannard, The Law Office of Gregory F. Stannard, Culver City, CA, for Plaintiff.

Bryan M. Weiss, Murchison and Cumming, Los Angeles, CA, for Defendants.

**ORDER GRANTING PLAINTIFF CHURCH MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY ADJUDICATION OF ISSUES AND DENYING DEFENDANT UNITED STATES LIABILITY INSURANCE COMPANY'S MOTION TO STRIKE**

BURNS, District Judge.

In this action, Plaintiff Church Mutual Insurance Company ("Church Mutual") seeks reimbursement from Defendant United States Liability Insurance Company ("USLIC") for its defense and indemnity payments to their mutual insured, Sky-

line Wesleyan Church, Inc. ("Skyline"). Church Mutual has moved for summary adjudication of the issues (1) whether USLIC owed Skyline a duty to defend, and (2) whether USLIC breached this duty. USLIC filed an opposition to this motion, and Church Mutual replied. For the reasons stated below, the Court **GRANTS** Church Mutual's motion for summary adjudication of issues and finds that USLIC owed Skyline a duty to defend and that it breached this duty. In reaching this finding, the Court does not express any opinion regarding Church Mutual's ultimate claim for reimbursement from USLIC.

In addition, USLIC moved to strike certain portions of the Declaration of Peter J. King in Support of Plaintiff's Motion for Summary Adjudication of Issues. Church Mutual opposed this motion. For the reasons stated below, USLIC's motion to strike is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Church Mutual and USLIC both issued insurance policies to Skyline. Church Mutual issued a general liability policy and USLIC issued a Non Profit Professional Liability Policy (the "USLIC Policy"). The effective dates of the USLIC Policy were March 4, 2002 to March 4, 2003. Before March 19, 2003,[1] Big Sky General Contractors, Inc. ("Big Sky") and its majority shareholder Herb Abell filed an action against Skyline, Big Sky's attorney Richard D. Corona ("Corona") and The Corona Firm LLP (the "Big Sky Action"). Big Sky and Abell alleged two counts of fraud (intentional misrepresentation and concealment as well as negligent misrepresentation), breach of contract, intentional infliction of emotional distress, and negligent infliction of emotional distress against all defendants. They alleged a cause of

1. The evidence does not reflect the date of the filing of the initial complaint.

action for enforcement of foreclosure of mechanic's lien against Skyline, and professional negligence (legal malpractice), breach of fiduciary duty (constructive fraud), interference with contractual relations, and interference with economic advantage against Corona and his firm.

On or about April 29, 2002, Skyline tendered the defense of the Big Sky Action to USLIC. On April 30, 2002, USLIC initially denied coverage, contending that it had no duty to defend Skyline against the claims alleged against it. Church Mutual alleges that on March 22, 2002, Skyline tendered defense to Church Mutual, and that it undertook the defense and indemnification of Skyline in the Big Sky Action based on its general liability policy. Church Mutual subsequently contacted USLIC and requested it to participate in the defense and indemnification of Skyline; however, on April 8, 2003, USLIC reiterated its previous denial of coverage. Church Mutual alleges that the claims in the Big Sky Action against Skyline were resolved in a settlement conference on April 9, 2003, by means of a payment by Church Mutual under its policy.

On July 14, 2003, Church Mutual filed the instant action against USLIC for equitable subrogation, equitable indemnity, equitable contribution, equitable restitution and declaratory relief, requesting that it be reimbursed by USLIC for defense and indemnity payments made on behalf of Skyline in connection with the Big Sky Action.

## DISCUSSION

### I. *Summary Adjudication of Issues*

Federal Rule of Civil Procedure 56(c) empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56 allows a party to move for summary judgment on any part of a claim or defense. *See* Fed.R. Civ.P. 56(a)-(d). "Summary adjudication may be appropriate on clearly defined, distinct issues." *FMC Corp. v. Vendo Co.,* 196 F.Supp.2d 1023, 1029 (E.D.Cal.2002), *citing Robi v. Five Platters, Inc.,* 918 F.2d 1439 (9th Cir.1990). "An order under Rule 56(d) narrows the issues and enables the parties to recognize more fully their rights, yet it permits the court to retain full power to completely adjudicate all aspects of the case when the proper time arrives." *FMC Corp.,* 196 F.Supp.2d at 1029–30, *citing* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (3d ed.1998), § 2737 at 316–18. Specifically, Rule 56(d) empowers the Court to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted" and to "mak[e] an order specifying the facts that appear without substantial controversy, and direct[ ] such further proceedings in the action as are just."

Summary adjudication is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In this case, Church Mutual moves for summary adjudication on one of USLIC's defenses. In its answer to the first amended complaint, USLIC relied on vari-

ous exclusions from coverage for its affirmative defense, claiming that its policy did not provide coverage for the claims alleged against Skyline in the Big Sky Action, thus contending that it did not owe a duty to defend. (p. 8–9, 11). The insurer bears the burden of bringing itself within a policy's exclusionary clauses. *HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 645 (9th Cir.1997)(applying California law).

█ Accordingly, the instant motion turns on the interpretation of the exclusions in the USLIC Policy. The proper construction of an insurance policy is a question of law. *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*, 68 Cal. App.4th 1030, 1038, 80 Cal.Rptr.2d 688 (1998). Furthermore, "[w]hether an exclusion is ambiguous and whether an insured has an objectively reasonable expectation of coverage under the insuring language are questions of law." *Smith Kandal Real Estate v. Cont'l Cas. Co.*, 67 Cal.App.4th 406, 415, 79 Cal.Rptr.2d 52 (1998).

## II. *Duty to Defend*

█ California law applies in this diversity action. A liability insurer owes a broad duty to defend its insured against claims that create the potential for indemnity. *Nat'l. Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 499 (9th Cir.1997), *citing Montrose Chemical Corp. of Cal. v.Super. Ct. (Can. Universal Ins. Co., Inc.)*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)(*en banc*). "The existence of a duty to defend turns upon the facts known to the insurer at the inception of the lawsuit, not upon the ultimate adjudication of coverage." *Nat'l. Steel*, 121 F.3d at 499 (citations omitted). "The duty to defend arises if the facts known to the insurer indicate a potential or possibility for indemnity. An insurer has no duty only if, at the time of its decision, it can prove that the claim cannot

fall within policy coverage." *Id., citing Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Church Mutual concedes that the breach of contract and foreclosure on mechanic's lien causes of action against Skyline are excluded from coverage under the USLIC Policy. (*See* Peter J. King Decl., Ex. A (USLIC Policy) p. 24 (¶ IV.J.)). Furthermore, Church Mutual does not dispute that the causes of action for intentional and negligent infliction of emotional distress are also excluded. (*See id.* at 22 (¶ IV.A.)).

█ However, the fact that some of the causes of action are excluded from coverage does not mandate a finding that there is no duty to defend. *See Wausau Underwriters*, 68 Cal.App.4th at 1036, 80 Cal. Rptr.2d 688 ("[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy."), 1043, 1046 ("[W]hen a suit against an insured alleges a claim that 'potentially' or even 'possibly' could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate by reference to 'undisputed facts' that the claim cannot be covered."). The relative burdens of the parties seeking a declaration on duty to defend were articulated in *Montrose:*

> To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.

6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. "If the facts alleged by the third party or known to the insurer create any potential for indemnity under the policy, the insurer must provide a defense even though noncovered acts are also alleged by the third party action." *Smith Kandal,* 67 Cal.App.4th 406, 414, 79 Cal. Rptr.2d 52 (1998); *see also Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 276 n. 15, 54 Cal. Rptr. 104, 419 P.2d 168 (1966).

Remaining against Skyline are two causes of action for fraud for intentional misrepresentation and concealment and for negligent misrepresentation, respectively. To prevail on its defense, USLIC must demonstrate that as a matter of law, there is no possibility for coverage under the USLIC Policy for these two causes of action. The Court finds that a possibility for coverage exists for the fraud claims against Skyline in the Big Sky Action.

## A. Breach of Contract Exclusion

■■ USLIC contends that the fraud claims arise out of breach of contract and that they are therefore excluded from coverage pursuant to the breach of contract exclusion, when read in conjunction with its broad prefatory language.[2] "An insurance policy, like all contracts, is to be interpreted to effectuate the mutual intent of the parties." *Smith Kandal,* 67 Cal. App.4th at 415, 79 Cal.Rptr.2d 52, *citing AIU Ins. Co. v.Super. Ct. (FMC Corp.),* 51 Cal.3d 807, 821, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). Where possible, the court looks solely to the terms of the policy; the clear and explicit meaning of the policy terms, understood in their ordinary and popular sense, will govern the interpretation. *AIU Ins. Co.,* 51 Cal.3d at p. 822, 274 Cal.Rptr. 820, 799 P.2d 1253. "If the policy is ambiguous because it is reasonably susceptible to more than one interpretation, the ambiguity is construed in favor of coverage." *Smith Kandal,* 67 Cal. App.4th at 415, 79 Cal.Rptr.2d 52, *citing Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986). Specifically, exclusions from and limitations to coverage are interpreted narrowly:

> Where the exclusion is clear, we will not rewrite the insurance contract to impose coverage where none was contemplated. However, an exclusion or limitation on coverage must be clearly stated and will be strictly construed against the insurer. If an exclusion ambiguously lends itself to two or more reasonable constructions, the ambiguity will be resolved against the insurer and in favor of coverage.

*Smith Kandal,* 67 Cal.App.4th at 414, 79 Cal.Rptr.2d 52.

The breach of contract exclusion in USLIC's Policy, together with its prefatory language, reads as follows:

> The Company shall not be liable to make payment for Loss or Defense Costs in connection with any Claim made against any Insured arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
>
> .    .    .    .    .
>
> J. any actual or alleged breach of contract.

(Peter J. King Decl., Ex. A (USLIC Policy), p. 22, 24 (¶ IV.J.)).[3] Focusing on para-

---

**2.** USLIC does not rely on paragraph B of Exclusions, which expressly refers to claims "brought about or contributed to in fact by any dishonest, fraudulent or criminal Wrongful Act ..." (Peter J. King Decl., Ex. A (USLIC Policy), p. 23 (¶ IV.B.)). Accordingly, the interpretation of this exclusion is not currently before the Court.

**3.** Various pleadings in this case purport to quote from the USLIC Policy; however, Church Mutual contends that some of USL-

graph J alone, the Court finds that it is unambiguous, and clearly applies only to breach of contract claims, not to fraud claims. Accordingly, USLIC's argument that the fraud claims in the Blue Sky Action "arise out of" breach of contract, depends on the interpretation of the prefatory language to the Exclusions section of the Policy. USLIC contends that pursuant to the prefatory language, no more than an incidental connection between breach of contract and fraud is required.

The parties have cited a plethora of cases interpreting the phrase "arising out of" or its equivalents in a variety of insurance contexts; however, as ample California law is available interpreting this phrase as used in exclusionary clauses in the context of duty to defend, the Court will rely on this line of authority.[4] When interpreting exclusion clauses in this context, "California courts generally have construed the term 'arising out of' as having broader significance and connoting more than causation," and some have equated it with "origination, growth or flow from the event." *Smith Kandal,* 67 Cal.App.4th at 419, 79 Cal.Rptr.2d 52 (citations omitted); *see also Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1080 (9th Cir. 1985). If the breach of contract exclusion, including its preamble, is read literally and broadly as urged by USLIC, the language "in connection with any Claim made against any Insured arising out of, directly or indirectly resulting from or in conse-

quence of, or in any way involving ... any actual or alleged breach of contract" would include any claim connected in any way with a breach of contract, no matter how attenuated the connection. *See HS Servs.,* 109 F.3d at 645.

However, this expansive interpretation is at odds with the coverage provision of the USLIC Policy, which provides coverage for "Wrongful Acts." Wrongful Act under the USLIC Policy includes "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties." (Peter J. King Decl., Ex. A (USLIC Policy), p. 20, 22 (¶¶ 1, II.M.)). One of the elements of the causes of action for intentional and negligent misrepresentation is misrepresentation. *See Lazar v.Super. Ct. (Rykoff–Sexton, Inc.),* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996)(intentional misrepresentation); *Fox v. Pollack,* 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (1986)(negligent misrepresentation). The plain meaning of "misrepresentation" is: "Wrong or incorrect representation of facts, statements, the character of a person, etc.; the action of misrepresenting someone or something. Also: an instance of this; a wrong or misleading representation." Oxford English Dictionary (June 2002), *available at* http://www.dictionary.oed.com. Plain meaning of "misrepresentation" therefore includes misstatements and misleading statements. Furthermore, the in-

---

IC's quotations are inaccurate. For the language of the USLIC Policy, the Court relies solely on the policy itself, attached as Exhibit A to Declaration of Peter J. King. USLIC agrees that Exhibit A is a true and correct copy of its policy. (John Snively Decl., ¶ 3).

4. The case law interpreting "arising out of" in the context of first party policies has been held distinguishable and inapplicable in the context of third party policies. *See Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989).

Cases interpreting "arising out of" as used in the additional insured endorsements and other coverage provisions are not on point because coverage provisions are liberally construed in favor of coverage, while exclusion provisions are narrowly construed against the insurer. *Charles E. Thomas Co.,* 62 Cal. App.4th 379, 384, 72 Cal.Rptr.2d 577 (1998); *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal.App.4th 1617, 1623, 50 Cal.Rptr.2d 224 (1996).

tentional misrepresentation claim in the Blue Sky Action includes concealment, another element of fraud. *See Lazar*, 12 Cal.4th at 638, 49 Cal.Rptr.2d 377, 909 P.2d 981. As the coverage provision includes omissions, misstatements and misleading statements, it plainly includes fraud, whether based on a misrepresentation or omission.

▬ The exclusionary language is ambiguous when read together with the coverage provision. It is susceptible to two interpretations: the expansive interpretation urged by USLIC, which eliminates three expressly stated bases for coverage,[5] and a narrower interpretation, which, without eviscerating coverage, accounts for the clearly stated exclusion for breach of contract and claims arising from it which are more than just incidentally related thereto. The narrower interpretation is more appropriate in this case for two reasons. First, exclusions are strictly construed against the insurer, and if ambiguous, must be resolved against the insurer and in favor of coverage. *Smith Kandal*, 67 Cal.App.4th at 414, 79 Cal.Rptr.2d 52. Second, the evisceration of coverage, which results if USLIC's interpretation is adopted, indicates that the parties apparently did not intend the exclusion to be read so expansively. *See HS Servs.*, 109 F.3d at 645. "It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage." *Id., citing Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986)(emphasis in original).

In circumstances similar to the case at hand, the court in *HS Services* narrowly interpreted the exclusion in favor of the insured's reasonable expectation of coverage. *HS Servs.*, 109 F.3d at 645 (applying California law). In the underlying action the third party plaintiff, former president of the insured, alleged that he was wrongfully terminated, and subsequently added a defamation claim. *Id.* at 644. After termination, the employer distributed a letter to its vendors to counteract representations previously made by the former president, who had formed a competing business following his termination. *Id.* The president represented that his former employer was experiencing financial difficulty and was a candidate for bankruptcy. *Id.* The employer's letter stated that it was financially sound, the former president was terminated for acts involving dishonesty, and that litigation was pending. *Id.* The employer's insurance policy provided coverage for claims of personal injury caused by libel and slander. *Id.* at 645. The policy excluded coverage for personal injury arising out of employment-related practices, including termination. *Id.* The court found that the literal and broad interpretation of the exclusion would exclude any claim connected in any way with employment termination, no matter how attenuated the connection. *Id.* The court refused to apply the exclusion in its literal and broad meaning in order to protect the insured's reasonable expectation of coverage. *Id.* Specifically, the court held that the alleged defamatory statement was not employment-related and that the relationship between the defamation and employment was too indirect and attenuated. *Id.* This narrow interpretation of exclusions in favor of duty to defend is consistent with recent California case law. *See, e.g., Low*

---

5. If USLIC's broad interpretation of the prefatory language is applied to the totality of the exclusions, the coverage all but disappears.

*v. Golden Eagle Ins. Co.,* 104 Cal.App.4th 306, 128 Cal.Rptr.2d 423 (2002)(focusing on the nexus between the cause of action at issue and the exclusion); *Smith Kandal,* 67 Cal.App.4th 406, 79 Cal.Rptr.2d 52 (1998) (narrowly interpreting exclusions in favor of coverage and finding duty to defend); *Charles E. Thomas Co. v. Transamerica Ins. Group,* 62 Cal.App.4th 379, 72 Cal.Rptr.2d 577 (1998)(same). Accordingly, in this case, the Court interprets the prefatory language to the breach of contract exclusion narrowly in favor of coverage and in favor of the insured's reasonable expectation of coverage.

The Court next examines whether the fraud claims against Skyline arise out of breach of contract, and whether the connection between them is more than just incidental. *See HS Servs.,* 109 F.3d at 646; *Low,* 104 Cal.App.4th at 314, 128 Cal.Rptr.2d 423. USLIC contends that the fraud claims are rooted in breach of contract, and should therefore be excluded from coverage. The Court finds that Blue Sky's complaint does not support this interpretation.

■ "The determination whether the insurer owes a duty to defend is made by comparing the factual allegations of the complaint and the extrinsic facts known to the insurer with the terms of the policy." *Charles E. Thomas Co. v. Transamerica Ins. Group,* 62 Cal.App.4th 379, 382, 72 Cal.Rptr.2d 577 (1998), *citing Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. A complaint is to be "liberally construed" in favor of potential coverage. *Michaelian v. State Comp. Ins. Fund,* 50 Cal.App.4th 1093, 1106, 58 Cal.Rptr.2d 133 (1996). "[T]he proper focus is on the facts alleged, rather than the theories for recovery." *Id., citing Gray,* 65 Cal.2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168. "The ultimate question is whether the facts alleged 'fairly apprise' the insurer that the suit is

upon a covered claim." *Michaelian,* 50 Cal.App.4th at 1106, 58 Cal.Rptr.2d 133, *citing Gray,* 65 Cal.2d at 275 n. 15, 54 Cal.Rptr. 104, 419 P.2d 168.

USLIC relies on *Continental Casualty Co. v. City of Richmond,* 763 F.2d 1076 (9th Cir.1985), *Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co.,* 42 Cal.App.4th 121, 49 Cal. Rptr.2d 567 (1996) and *Michaelian v. State Compensation Insurance Fund,* 50 Cal. App.4th 1093, 58 Cal.Rptr.2d 133 (1996). In all three cases, the court determined that the insurer did not owe a duty to defend because the claims in the third party complaint fell within the exclusions. In *Continental,* the third party complaint alleged that police officers assaulted, beat, and choked a prisoner, causing his death. 763 F.2d at 1078. The complaint also alleged that this conduct indicated a pattern and practice of police brutality and excessive force against black citizens and that it resulted from the city's failure to properly train and supervise. *Id.* Last, the complaint alleged that the prisoner was denied appropriate medical attention, and that the police officers conspired to conduct a biased investigation. *Id.* The complaint stated causes of action for wrongful death and violation of constitutional rights. *Id.* The city's Public Officials Liability policy provided coverage for employee misfeasance, malfeasance and nonfeasance, but excluded coverage for claims arising from bodily injury, assault, battery or death. *Id.* The court found that the exclusion was unambiguous. *Id.* at 1080. The city conceded that the policy excluded coverage for wrongful death, but argued that it covered civil rights violations. *Id.* The court found that the very existence of the constitutional claims depended on physical injury and that the constitutional claims were closely connected with the underlying physical injuries. *Id.* at 1081. The court held that

the civil rights claims arose out of the physical injuries, and were therefore not covered. *Id.* at 1081.

In *Century Transit,* the third party complaint alleged that the insured's employee, a taxi driver, made verbal and physical threats against gay rights demonstrators. 42 Cal.App.4th at 123, 49 Cal. Rptr.2d 567. After a witness contacted Century City about the taxi driver's actions, Century City did not take him off the street. *Id.* Later that day, when the taxi driver again came upon the demonstration, he physically attacked two men who were videotaping the demonstration. *Id.* at 124, 49 Cal.Rptr.2d 567. The third party complaint alleged causes of action for assault and battery and for negligent hiring, supervision and retention. *Id.* at 123, 49 Cal.Rptr.2d 567. Century Transit's insurance policy provided for coverage of accidents resulting in bodily injury, which were neither expected nor intended form the standpoint of the insured, and specifically included coverage for intentional acts by or at the direction of the insured resulting in bodily injury arising solely from the use of reasonable force to protect persons or property. *Id.* at 124, 49 Cal.Rptr.2d 567. The policy excluded coverage for claims based on assault and battery, and expressly stated that assault was not to be deemed an accident, whether or not committed by or at the direction of the insured. *Id.* The court found that the exclusion was unambiguous. *Id.* at 126, 49 Cal.Rptr.2d 567. It concluded that the third party action against Century Transit was based on assault and battery, including the alleged acts of negligent hiring, supervision and retention. *Id.* at 128, 49 Cal.Rptr.2d 567. Accordingly, the court held that the negligence allegations could not provide a basis for coverage. *Id.*

In *Michaelian,* the third party plaintiff alleged that her employer subjected her to verbal, physical and visual sexual harassment, and stated causes of action for sexual harassment, constructive discharge, assault and battery, and intentional and negligent infliction of emotional distress. 50 Cal.App.4th at 1099–1100, 58 Cal.Rptr.2d 133. Michaelian's insurance policy provided for coverage of bodily injury to an employee arising out of the employment, and excluded coverage for bodily injury intentionally caused or aggravated by the employer and damages arising out of discharge of or discrimination against an employee in violation of the law. *Id.* at 1099, 58 Cal.Rptr.2d 133. Michaelian argued that coverage existed for negligence, because one of the causes of action was negligent infliction of emotional distress. The Court found that the gravamen of the third party complaint was sexual harassment. *Id.* at 1107, 58 Cal.Rptr.2d 133. Accordingly, the court held that the policy did not provide coverage. *Id.*

Unlike in the above cases, the gravamen of the Blue Sky Action against Skyline is not excluded under USLIC's policy. The allegations of the second amended complaint, which was provided to USLIC before it ultimately denied coverage on April 8, 2003, do not support USLIC's argument that the fraud causes of action arose out of breach of contract.

According to Blue Sky's complaint, its counsel, Corona, introduced Blue Sky to his church, Skyline, and inquired if Blue Sky would be interested in construction work for Skyline. (¶ 18). Corona, as Blue Sky's counsel, prepared the construction contract. (¶ 20). After Blue Sky started working for Skyline and submitted billing statements for the work performed, Corona, on behalf of Skyline, expressed concerns regarding Blue Sky's billing statements and other issues. (¶ 22). Skyline, through Corona, also falsely represented

that Blue Sky's work was unprofessional, inconclusive, unsatisfactory and in breach of the construction contract. (¶ 54). Blue Sky alleged that in these discussions, Corona represented Skyline's interests. (¶ 22). During the discussions regarding Blue Sky's billing statements, Abell, Blue Sky's majority shareholder, spoke to Skyline personnel directly, in addition to communicating with Skyline through Corona, and was led to believe that if Blue Sky changed the billing statements as requested by Skyline, Skyline would pay the amounts owed. (¶ 26). Nevertheless, Skyline did not pay the amounts owed. (¶¶ 27, 69).

During this time period, Corona approached Abell and asked him to testify on behalf of Skyline in a matter brought by subcontractors against Skyline for unpaid bills, similar to the dispute between Skyline and Blue Sky. (¶ 28). Corona and Skyline wanted Abell to testify that a subcontractor's work was substandard and that the subcontractor was not owed the full amount of its fees. (*Id*). Abell disagreed and refused to testify. (*Id*).

Subsequently, Blue Sky's key employee on the Skyline job quit. (¶ 33). On the same day, Skyline hired that employee and the rest of Blue Sky's employees. (*Id*). At approximately the same time, Skyline terminated its contract with Blue Sky based on Blue Sky's loss of the key employee. (*Id*). Blue Sky alleged that Skyline had stolen the core of its business. (*Id*).

Since then, Blue Sky learned that more than twelve contractors and subcontractors in San Diego were owed money by Skyline, and that they filed numerous actions against Skyline. (¶¶ 36, 37). Accordingly, Blue Sky alleged that, with Corona's advice, Skyline was involved in a pattern and practice to defraud contractors by entering into contracts without intention to pay. (¶¶ 38, 57; *see also* ¶¶ 53, 55, 70, 76).

Focusing on the facts alleged rather than on the theories of recovery, the gravamen of Blue Sky's claims against Skyline is fraud rather than breach of contract. Based on the complaint, Skyline's failure to perform the contract arises out of its fraudulent intent. USLIC contends that the Blue Sky Action would not have been brought against Skyline but for Skyline's failure to pay for Blue Sky's work. This interpretation of Blue Sky's complaint is belied by the allegations that Skyline defrauded Blue Sky into reducing its billing statements by falsely claiming that Blue Sky's work was unsatisfactory, and that Skyline stole the core of Blue Sky's business. These allegations are independent of breach of contract.

Blue Sky's complaint therefore fairly apprised USLIC that the action was based upon fraud. Accordingly, the Court finds that coverage for the fraud causes of action is not precluded by the "arising out of breach of contract" exclusion of the USLIC Policy.

## B. Pending or Prior Litigation Exclusion

USLIC's second argument is that the fraud causes of action are excluded under the pending or prior litigation exclusion, when read with the expansive preamble to the Exclusions section of the Policy:

> The Company shall not be liable to make payment for Loss or Defense Costs in connection with any Claim made against any Insured arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
>
> ·    ·    ·    ·    ·
>
> K. any pending or prior litigation, administrative or regulatory proceeding, claim, demand, arbitration, decree, or

judgment of which an Insured had written notice before the inception date of this Policy; ... or any future Claims or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged; ...

(Peter J. King Decl., Ex. A (USLIC Policy), p. 22, 24 (¶ IV.K.)).

On November 8, 2001, Big Sky filed and recorded a mechanic's for the amounts owed by Skyline. Church Mutual conceded that the cause of action for enforcement or foreclosure of mechanic's lien is excluded from coverage pursuant to the breach of contract exclusion. USLIC argues that the filing and recording of the mechanic's lien constitutes a pending prior claim or demand for which Skyline had knowledge prior to the inception of the USLIC Policy. USLIC contends that Skyline's knowledge of the mechanic's lien should preclude coverage for the fraud causes of action because all of the claims and damages in the Blue Sky Action flow from Skyline's failure to pay for Blue Sky's work.

As discussed above, the prefatory language to the exclusion is ambiguous because it is at odds with the coverage provision, and should therefore be interpreted narrowly. Furthermore, based on Blue Sky's complaint, the gravamen of its claims against Skyline is fraud, rather than failure to pay for construction work. Accordingly, the Court finds that the fraud causes of action in the Blue Sky Action are not excluded by the pending or prior litigation exclusion.

Based on the foregoing discussion, the Court finds that neither the breach of contract nor the pending or prior litigation exclusion preclude coverage for the fraud causes of action against Skyline. USLIC therefore owed Skyline a duty to defend in the Blue Sky Action.

### III. *Breach of Duty to Defend*

USLIC admits that Skyline tendered defense of the Blue Sky Action to it, and that it denied that it had a duty to defend. As the Court has found that USLIC had a duty to defend, the Court also finds that USLIC breached its duty by refusing to defend Skyline.

### IV. *Motion to Strike*

In opposition to Church Mutual's motion for summary adjudication, USLIC filed a motion to strike exhibits 1.B. through E, 1.G and 1.H to the declaration of Peter J. King, and the corresponding paragraphs 4 though 7, 9 and 10, for failure to properly authenticate the exhibits. The objected-to paragraphs list the attached exhibits, which consist of: the April 30, 2002 correspondence from USLIC to Skyline, informing Skyline that it would not provide defense in the Blue Sky Action (ex. 1.B), June 7, July 12 and July 29, 2002 correspondence from Skyline to USLIC regarding duty to defend (ex. 1.C, D, E), and August 2 and 8, 2002 correspondence from USLIC to Skyline regarding same (ex. 1.G, H). Although the declaration itself does not authenticate these exhibits, Church Mutual contends that authentication is unnecessary, because the same exhibits were attached to its first amended complaint, and that in its answer USLIC admitted the authenticity of these exhibits.

USLIC's answer to the first amended complaint did not deny the allegations pertaining to the exhibits or assert that the exhibits were in any way false. At most, in some instances, USLIC asserted that the exhibits spoke for themselves as to their content. (*See* First Am. Compl. ¶¶ 13, 17–20, 22 and corresponding paragraphs in Answer of USLIC to First Am. Compl.). Accordingly, the Court finds

that USLIC has waived its objections to the authenticity of the exhibits. Furthermore, as it was not necessary to rely upon the exhibits to reach a decision on Church Mutual's motion for summary adjudication, the Court further finds that USLIC's motion to strike is moot. Accordingly, USLIC's motion to strike is **DENIED**.

### CONCLUSION

Based on the foregoing, the Court finds that USLIC had a duty to defend Skyline in the Blue Sky Action and that USLIC breached this duty. Accordingly, Church Mutual's motion for summary adjudication is **GRANTED**. USLIC's motion to strike is **DENIED**.

**IT IS SO ORDERED.**