Filed 9/23/16  Golden Eagle Ins. Corp. v. Munoz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GOLDEN EAGLE INSURANCE CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALANA MUNOZ,<br><br>    Defendant and Appellant, | G052223<br><br>(Super. Ct. No. 30-2014-00713009)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.

Law Office of John P. Yasuda and John P. Yasuda for Defendant and Appellant.

Edwards & Hunter, Richard P. Edwards and Ellen E. Hunter for Plaintiff and Respondent.

Alana Munoz appeals from the trial court's grant of Golden Eagle Insurance Corporation's (Golden Eagle) motion for summary judgment in Golden Eagle's declaratory relief action against Munoz, Sirous & Sons Rug Gallery, Inc. (S&S) and Saeid Maralan. In a separate action, Munoz sued S&S and Maralan seeking damages for personal injury caused by sexual assault and harassment (Munoz Action). Munoz contends Golden Eagle has a duty to defend S&S and Maralan because there is possibility of coverage for some of her claims against them. We conclude the trial court correctly decided there was no triable issue of fact and affirm the judgment.

FACTS

The following factual summary is taken from the operative complaint. S&S is a shop in Laguna Beach that sells Persian rugs. S&S knew Maralan was a registered sex offender and hired him anyway.

In August 2010 Munoz, a female minor, went to S&S looking for a job. Maralan offered Munoz employment, and she started work a few days later. When Munoz arrived for her first day, Maralan "hugged her and kissed her on both sides of the lips." He then "took her by the hand and asked if she would do something for him" and "again hugged her and kissed her on the lips." He "gave her a $100 bill and asked her to go get some ice cream" and "repeatedly told her how beautiful she was." A few days later, Munoz returned to work. While there, Maralan began "caressing her face, arms and her head." He gave her $100 to make some photocopies and told her to keep the change. He later told her to come into the vault where "he pulled her close to him and tried to kiss her . . . ."

Munoz brought a lawsuit against both Maralan and S&S for sexual harassment, and assault and battery. Munoz sued Maralan individually for false imprisonment and intentional infliction of emotional distress (IIED). She alleged the following causes of action against S&S: (1) negligence in hiring and supervising Maralan; (2) wrongful termination in violation of public policy; (3) constructive

2

termination; and (4) failure to take reasonable steps to prevent harassment from occurring pursuant to Government Code section 12940, subdivision (k).

Golden Eagle issued to S&S a Commercial General Liability policy (CGL policy), which was in effect from March 1, 2010, to March 1, 2011. The CGL policy provides coverage for sums the insured becomes legally obligated to pay as damages because of bodily injury only if the bodily injury is caused by an occurrence that takes place in the coverage territory. The policy defines occurrence to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions. The policy also includes an employment-related practices exclusion, which excludes coverage to bodily injury to a person arising out of termination of that person's employment or employment-related practices, policies, acts, or omissions, such as coercion, harassment, and humiliation. The exclusion applies whether the insured may be liable as an employer or in any other capacity. In addition, the policy contains a "Separation Of Insureds" clause stating the insurance applies separately to each insured against whom a claim is made.

In 2014 Golden Eagle filed a declaratory relief action (GE Action) to adjudicate whether Golden Eagle has an obligation to defend and/or indemnify any defendant in the Munoz Action. Golden Eagle named Munoz, Maralan, and S&S as defendants. In its complaint, Golden Eagle maintained there was no insurance coverage because the Munoz Action alleged intentional acts and allegations falling under several exclusions, including the employment-related practices exclusion (ERP exclusion).

Munoz filed a motion for summary judgment in the GE Action. She alleged Golden Eagle could not establish as a matter of law that no possibility of coverage existed in the underling Munoz Action.

Golden Eagle then filed its own motion for summary judgment asserting the ERP exclusion "is a broad exclusionary endorsement which excludes, without qualification, coverage for the harassment of Munoz." The court heard both motions and

3

granted Golden Eagle's motion for summary judgment, ruling "there [was] no potential for coverage under the policies of insurance issued by Golden Eagle." In the court's minute order, the court stated it declined to rule on Munoz's motion because it was procedurally defective. It added, Munoz's arguments in support of her motion were addressed in her opposition to Golden Eagle's motion and were therefore considered.

## DISCUSSION

On appeal, Munoz makes the following arguments: (1) Golden Eagle erroneously included in its summary judgment motion mere allegations mentioned in her unverified third amended complaint to prove Maralan's actions were intentional and therefore precluded from coverage; (2) the term "occurrence" used in the CGL policy is ambiguous; (3) the "Separation of Insured" clause contained in the CGL policy requires a separate analysis of insurance coverage for S&S apart from Maralan; and (4) Golden Eagle did not meet its initial burden of proof and therefore the burden did not shift to Munoz. Noticeably absent from her opening brief is any discussion of the policy's ERP exclusion. We conclude all causes of action raised in the Munoz Action fell within this exclusion. The court correctly determined there was no potential for coverage under the policy.

### A. Standard of Review

"We review de novo an order granting summary judgment. [Citation]. We need only address sufficient grounds to affirm. [Citation.] [¶] The meaning of the policy is a legal question. [Citation.] '"To prevail [on the issue of the duty to defend], the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. . . ."* [¶] Nevertheless, the obligation to defend is not without limits. "Rather, such a duty is limited by 'the nature and kind *of risk covered by the policy.*'" [Citations.] "'[T]he duty to defend derives from the insurer's coverage obligations assumed under the

4

insurance contract.' [Citation.] Thus, 'where there is *no potential* for coverage, there is no duty to defend.'"' [Citations.] [¶] In assessing coverage and exclusion issues, we look primarily to the allegations of the underlying complaint: Ambiguities are construed in favor of the insured. [Citation.]" (*Uhrich v. State Farm Fire & Casualty Co*. (2003) 109 Cal.App.4th 598, 607-608.)

## B. *The ERP Exclusion Applies*

Insurers have authority to exclude policy coverage. "'Coverage may be limited by a valid endorsement. . . . But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be "conspicuous, plain and clear."' [Citation.]" (*Esparza v. Burlington Ins. Co.* (E.D.Cal. 2011) 866 F.Supp.2d 1185, 1201.)

In this case, the ERP exclusion provided as follows: "This insurance does not apply to: [¶] 'Bodily injury' to: [¶]

"(1) A person arising out of any:

"(a) Refusal to employ that person;

"(b) Termination of that person's employment; or

"(c) Employment-related practices, policies, act or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

"(2) The spouse, child, parent, brother or sister of that person . . . .

"This exclusion applies:

"(1) Whether the insured may be liable as an employer or in any other capacity; and

"(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury."

Several courts have interpreted the language of this exclusion as having a very broad scope. For example, in *Jon Davler Inc. v. Arch Ins. Co.* (2014) 229 Cal.App.4th 1025 (*Jon Davler*), the employer, Davler, brought an insurance coverage action against its insurer. Davler's manager, Yang, became enraged when she found a used sanitary napkin near the women's toilet and she forced every female employee to undergo inspection to determine if they were on their menstrual period and the possible source of the napkin. (*Id.* at p. 1029.) Several employees brought a false imprisonment and sexual harassment suit against Davler and Yang. (*Ibid.*) Davler tendered defense to its insurer under its commercial general liability policy that provided coverage for injuries "'arising out of'" "'[f]alse arrest, detention[,] or imprisonment.'" (*Id.* at p. 1030.) The insurer declined coverage because the policy also had an employment-related practices exclusion (almost identical to the one in the case before us.)

The ERP exclusion in the *Jon Davler* case stated, "that the coverage for personal and advertising injury did not apply to an injury arising out of any refusal to employ a person, termination of a person's employment, or [e]mployment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person . . . ." (*Jon Davler, supra,* 229 Cal.App.4th at p. 1030.) The court sustained the insurers' demurrer to Davler's breach of contract action, holding the employees' suit fell within the ERP exclusion. The appellate court agreed, rejecting Davler's claim the ERP exclusion was ambiguous or did not apply to false imprisonment claims. (*Id.* at p. 1033.)

The *Jon Davler* court concluded, "The phrase 'such as' is 'not intended to be exhaustive' [citation] and is '"illustrative and not limitative"' [citation]. The use of the phrase 'such as' in an exclusion is 'nonexclusive' and ""'is not a phrase of strict limitation, but is a phrase of general similitude indicating that there are includable other matters of the same kind which are not specifically enumerated.'"" [Citations.]" (*Jon*

*Davler, supra,* 229 Cal.App.4th at pp. 1033-1034.) Similarly, the court noted the ERP exclusions' use of the term "arising out of" must be broadly interpreted to link events with the exclusion. (*Id.* at p. 1035.) "'"California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship."' [Citations.]" (*Ibid.*)

The court determined the Davler employees' injuries caused by their false imprisonment arose out of their employment. (*Jon Davler, supra,* 229 Cal.App.4th at p. 1035.) The court reached this conclusion after applying the two part test outlined in *Low v. Golden Eagle Ins. Co.* (2002) 104 Cal.App.4th 306 (*Low*). The "'factors relevant to the . . . determination' of whether the events in the underlying action were within the scope of the employment-related practices exclusion 'include (1) the nexus between the allegedly defamatory statement (or other tort) at issue and the third party plaintiff's employment by the insured, and (2) the existence (or nonexistence) of a relationship between the employer and the third party plaintiff outside the employment relationship.' [Citation.]" (*Jon Davler, supra,* 229 Cal.App.4th at p. 1035, citing *Low, supra,* 104 Cal.App.4th at p. 314.)

The *Jon Davler* court, considering these two factors, concluded "the nexus between the 'other tort' (i.e., false imprisonment) and the employees' employment with . . . Davler was as close as a nexus can be: the only reason the employees were forced into the bathroom for inspection was that they were employed by . . . Davler, were following a directive from a supervisor at their place of employment, and would lose their jobs if they did not comply with the inspection demand. And there was nothing in the allegations of the complaint in the underlying action suggesting that there was any relationship between . . . Davler and the employees subject to the inspection other than

7

the employer-employee relationship. Indeed, cases involving strip searches of employees have held that the employment-related practices exclusion applies to bar coverage. [Citations.]" (*Jon Davler, supra,* 229 Cal.App.4th at pp. 1035-1036.)

The court rejected Davler's argument the exclusion's language was ambiguous because the term "employment-related" was not properly defined in the policy. "'The term [employment-related] is not technical in nature. It is used in its ordinary sense, i.e., related to employment. As a term, it modifies the specified acts (including defamation) as well as the terms "practices, policies, acts or omissions." The clear meaning of . . . the exclusion is coverage for practices, policies, acts or omissions which are related to employment, including employment-related defamation.' [Citations.]" (*Jon Davler, supra,* 229 Cal.App.4th at p. 1037.) The court recognized the ERP exclusion did not list false imprisonment as one of the examples of an employment-related practice, policy, act or omission. However, it determined this did not matter because the exclusion's language "provides a nonexhaustive list of examples of employment-related practices, policies, acts or omissions, so that other practices, policies, acts or omissions may qualify as employment related. [Citation.]" (*Ibid.*)

Finally, the *Jon Davler* court explained why the exclusion satisfied the "plain and clear language" required for all insurance policy exclusions. It reasoned, "An average layperson would understand that the exclusion applies to a category of claims: those arising in the employment setting. An average person knows what employment is. [Citations.] . . . Unlike technical legal or medical terms, 'employment-related' and 'arising out of employment' are not terms or phrases that average persons cannot understand. [Citation.]" (*Jon Davler, supra,* 229 Cal.App.4th at pp. 1040-1041.)

The ERP exclusion in our case is similarly unambiguous and applies to Munoz's claims. We begin with her claims for sexual harassment, assault, battery, false imprisonment, and IIED against Maralan individually. The ERP exclusion expressly excludes coverage for coercion, harassment, and humiliation. As stated in the *Jon Davler*

8

case, the exclusion also applies to false imprisonment and other torts occurring in the workplace. (*Jon Davler, supra,* 229 Cal.App.4th at pp. 1035-1036.) Applying the two factors used by *Low* and *Jon Davler* courts, we conclude the nexus between the alleged torts and Munoz's employment was "as close as a nexus can be" (*id.* at p. 1035), because the only reason she suffered her injuries was because she was hired by S&S and directly supervised by Maralan. There are no facts suggesting there was any other relationship between S&S and Maralan and Munoz other than an employer-employee relationship.

Turning to Munoz's claims against S&S, we reach the same result. She raised the following causes of action against S&S: (1) negligence in hiring and supervising Maralan; (2) wrongful termination in violation of public policy; (3) constructive termination; and (4) failure to take reasonable steps to prevent harassment from occurring pursuant to Government Code section 12940, subdivision (k). In her reply brief, Munoz only focuses on the causes of action alleging S&S's negligence in hiring, supervising, and retaining Maralan and argues these claims were not meant to be included in the policy's ERP exclusion for three reasons. We are not convinced by her arguments.[1]

First, Munoz argues S&S's negligent conduct is not specifically enumerated in the ERP exclusion's list of causes of action. As mentioned earlier, this same argument was rejected in the *Jon Davler* case. It held that although false imprisonment was not expressly listed in the exclusion as an example of an employment related practice, the policy listed the examples after the phrase "such as" signifying it was a nonexhaustive list. (*Jon Davler, supra,* 229 Cal.App.4th at p. 1038.) The exclusion's list is "examples of employment-related practices, policies, acts[,] or omissions, so that

---

[1] We consider any purported challenge to the other claims falling within the exclusion as being waived because they are not mentioned in either the opening or reply brief. Appellate briefs must provide argument and legal authority for the positions taken. In the absence of legal argument, the issue is deemed waived. (*Pringle v. LaChapelle* (1999) 73 Cal.App.4th 1000, 1003, fn. 2.)

*other practices, policies, acts[,] or omissions may qualify as employment related.* [Citation.]" (*Id.* at p. 1037, italics added.) Like the *Jon Davler* ERP exclusion, the one in this case clearly provides "that injuries arising out of all kinds of employment-related practices, including those listed as examples, are subject to the exclusion." (*Id.* at p. 1038.)

Second, Munoz argues the actions listed in the exclusion are "intentional" and not "negligent based actions," which is significant because negligent actions are covered by the policy. This same argument was also rejected in the *Jon Davler* case. In that case the policy generally covered injuries arising out of false imprisonment, but nevertheless the court held the employees' claim of being falsely imprisoned by their supervisor during their workday to check for sanitary napkins fell within the ERP exclusion. (*Jon Davler, supra,* 229 Cal.App.4th at p. 1034.)

To the extent Munoz is suggesting the ERP exclusion only relates to intentional torts, she failed to supply any legal authority to support this theory, and we found none. In the *Jon Davler* case, the court noted the tort of false imprisonment shared a "general similitude with several of the matters specifically enumerated in the employment-related practices exclusion, such as coercion, discipline, and harassment." (*Jon Davler, supra,* 229 Cal.App.4th at p. 1034.) However, it never indicated the exception only covered intentional tortuous conduct. Rather, the court determined the policy language was written to broadly cover *any* bodily injury arising out of "all kinds of employment-related practices" between the insured and its employee. (*Id.* at p. 1038.) The exclusion is unqualified and an average layperson knows employment practices encompass both intentional and negligent actions. Certainly the hiring and supervision of a supervisor falls within the scope of "employment-related practices."

10

Other jurisdictions agree negligent supervision and hiring are included in ERP exclusions. For example, in *Parts Inc. v. Utica Mut. Ins. Co.* (D.Md. 2009) 602 F.Supp.2d 617 (*Parts Inc.*), a 17-year-old female employee of an auto supply store sued, alleging sexual harassment by her supervisor and alleged the store (B&J) was liable for negligent retention and supervision. The court held the insurance company's ERP exclusion precluded coverage and any duty to defend B&J for its "alleged failure to properly supervise and restrain [the girl's] supervisor during her employment with B&J." (*Id.* at p. 623) The court explained, "Although the exclusion does not explicitly list supervision and retention, the exclusion's use of the term 'such as' indicates that the list of employment-related practices is neither exhaustive nor exclusive." (*Id.* at p. 623; see also *Agricultural Ins. Co. v. Focus Homes, Inc.* (8th Cir. 2000) 212 F.3d 407, 411 [finding exclusion applies to claims for sexual harassment, assault and battery, IIED, negligent infliction of emotional distress, *negligent hiring and supervision*, whistle blower, and aiding and abetting because "[e]ach of these claims turns on employment practices"].)

Finally, we turn to Munoz's third argument. She maintains S&S's actions must be considered separate from Maralan's actions. She reads the ERP exclusion to preclude coverage for injuries to "a person" arising out of employment-related practices "directed at that person." Munoz argues she was the person who sustained bodily injury but S&S's actions (of negligent hiring, supervision, and retention) were not directed towards her. She maintains the cause of action describes conduct directed towards Maralan. In other words, Munoz believes the exclusion only applies to employment related practices, policies, or omissions directed at the person claiming injury. Not so.

The exclusion applies to employment related practices directed at the person claiming injury "or" their family members. More importantly, the policy expressly provides the "exclusion applies" regardless of "[w]hether the insured may be liable as an employer *or in any other capacity*" and applies "[t]o any obligation to share

11

damages with or repay someone else who must pay damages because of the injury." The exclusion expressly applies regardless of the capacity in which R&R is found liable for Munoz's sexual harassment injuries in the workplace. A layperson would plainly understand the focus of the ERP exclusion is the injury and causes rather than the specific pleaded claims asserted against the insured. (See e.g. *Northwest G.F. Mut. Ins. Co. v. Norgard* (N.D. 1994) 518 N.W.2d 179, 184 [coverage turns on injury's cause not legal theory asserted].) Here, it was alleged R&R's misconduct in hiring, supervising, and retaining Maralan facilitated and resulted in the acts of sexual harassment that *caused* Munoz's injuries. For all the reasons stated above, we conclude the ERP exclusion precludes coverage for all claims alleged against both S&S and Maralan. The trial court properly granted the summary judgment motion.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

12